## Weaver Estate

*Duffy, McTighe & McElhone,* for accountant.

*Therman P. Britt, Bernard E. DiJoseph* and *Smith & Cahall,* for claimants.

TAXIS, P. J., December 20, 1955.—Carl E. Weaver died on April 6, 1952, intestate, and letters of administration on his estate were granted to his widow, Connie M. Weaver, on April 14, 1952. Decedent was married and left to survive him a widow, the said Connie M. Weaver, and issue, one child, Carl Fred Weaver, a son by a previous marriage. . . .

At the audit, Dr. Thomas E. Lindsay, a practicing physician, made claim for $75 for professional services rendered to Carl Fred Weaver, decedent's 11-year-old son, from February 2, 1952, until decedent's death on

April 6, 1952. The claim reflects a bill for 25 almost consecutive weekly visits to the office of claimant, at $3 per visit, for the treatment of an upper respiratory infection and a speech difficulty. The accountant concedes that this bill should be paid, but denies liability on the part of the estate, and the accountant takes the view that decedent's former wife, Kathryn Weaver, is liable for this bill by virtue of the terms of a separation agreement entered into on September 11, 1951, by her and decedent.

In paragraph 5(b), the agreement provides: "It is further agreed the wife shall have custody of their child, Carl Fred Weaver, and the husband shall pay to the wife $15 a week for the support and maintenance of said child and all extraordinary hospital and medical expenses, or for any other extraordinary expenses, until the child attains a majority or becomes self-supporting."

I am of the opinion that, inasmuch as the ailments from which the minor child, Carl Fred Weaver, suffered, had extended over a period of 25 or more weeks, under the terms of the separation agreement and the understanding of the parties when it was made, the claim must be regarded as having been rendered for an extraordinary medical expense. Such a construction is further borne out by the evidence that decedent, in his lifetime, so regarded the illness when he paid bills for similar medical expenses apart from the sums paid under the separation agreement. I conclude, therefore, that this estate is liable for the cost of the medical services rendered by Dr. Thomas E. Lindsay, and the claim is accordingly allowed. . . .

The guardian of the minor son also presented its claim for support of the minor at $15 per week "until the child attains majority or becomes self-supporting", pursuant to paragraph 5(b) of the settlement agreement· already quoted. Accountant resists the claim,

contending that, by its very terms, the requirement to support the child has terminated for the reason that the child, although only 11 years of age, is "self-supporting" within the meaning of said section 5(b) of the agreement, since the child's share of his father's estate will be in the approximate amount of $35,000 (one half of the estate).

If this sum were to be invested at present rates of return, the child will receive an income substantially greater than he would receive at the rate of $15 a week. The fund which has made him "self-supporting" has come from his father's estate. The decision of the Supreme Court in Huffman v. Huffman, 311 Pa. 123, cited by the executor, is distinguishable, for there decedent died testate and the will made no provision whatsoever for carrying out that phase of the support agreement in which the father agreed to pay $30 per month for the support of his minor child. The court said, in that case: "It is clear beyond question that the agreement has not been fully complied with." In the present case, however, the agreement has been fully complied with because decedent made provision, by dying intestate, to the point where his child is now "self-supporting".

The matter may be viewed in a different light. By its terms, this agreement to pay $15 per week for the son's support, terminates when the son becomes 21 or sooner if he should, in the meantime, become "self-supporting". Assuming that the minor will reach the age of 21 (he is now 11 years of age) and, during minority, does not become self-supporting, the father's liability under the agreement would be approximately $8,600. Yet, from the father's estate, the son will receive at least $35,000. By dying intestate, thereby providing that one half of his estate shall go to his son, decedent has fulfilled his liability under this contract. The claim of the guardian is dismissed. . . .

*Opinion sur Exceptions*

TAXIS, P. J., January 19, 1956.—Abington Bank and Trust Company, guardian of the estate of Carl Fred Weaver, a minor, filed five exceptions to the adjudication of the court dated December 20, 1955.

Exception number one complains that the court failed to surcharge the administratrix in the amount of $537 for certain items of personal property for which she did not account. They consisted of four chain hoists, $392, an air compressor, $125, and an extension ladder, $20. The testimony on this phase of the case is somewhat vague but establishes basically that the items referred to (except the ladder) were affixed to the realty and, for that reason, were not accounted for as personalty. There is no merit to this exception, and it is therefore dismissed.

Exception number two complains that the auditing judge erred in not surcharging the administratrix $25 concerning an increase in the value of an outboard motor for which she accounted. The inventory carried this outboard motor at a value of $50, but on cross-examination the accountant admitted that it may be worth $75. However, the fiduciary still has possession of this outboard motor and will account for the same when sold. This may be reflected in the schedule of distribution which has been ordered filed. The court, therefore, did not err in refusing to surcharge the administratrix in this amount. Exception number two is therefore dismissed.

Exception number three was withdrawn by counsel at bar.

Exception number four complains concerning the method by which the administratrix used to fix the value of certain personalty in the Bayshore, N. J., home, which consisted primarily of furniture. Since this furniture is still in the hands of the fiduciary and awaiting sale, the same may be picked up in the

schedule of distribution; if upon sale inadequate prices obtain, then objections can be filed at that time. Exception number four is dismissed.

Exception number five complains that: "The Learned Judge erred in dismissing the claim of guardian of the minor which was based upon a written agreement of the decedent with respect to the minor's support." The argument raised upon the exceptions presented no new matter not already considered by the auditing judge and his views there expressed are reaffirmed. Exception number five is dismissed.

And now, January 19, 1956, exceptions number one, two, four and five, are dismissed, and the adjudication confirmed absolutely.