## ADELAIDE STUMPF'S APPEAL.

APPEAL FROM THE ORPHANS' COURT OF CARBON COUNTY.

Argued March 7, 1887—Decided April 11, 1887.

1. A contract in writing was made between S. of the one part and F. of the other, reciting as inducement the pendency against F. of a criminal prosecution for fornication and bastardy and a civil action for breach of promise to marry; by which contract it was agreed upon the part of S. to deliver her child into the care of G. and to discontinue and settle said actions, acknowledging satisfaction in full of all claims against F.; and on the part of F. to pay all costs in said causes, "to relieve the said S. from any cost or expense in the support and maintenance of said child and to see that it was well taken care of, and further to pay to S. thirty dollars in full settlement" etc. *Held*, that this contract created a liability not limited by the lifetime of F., and that, therefore, a portion of his estate after his death should be set apart and the income thereof be applied to the support and maintenance of said child.

Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN, CLARK, JJ.; GORDON J., absent.

No. 442 January Term, 1887, Sup. Ct.

On October 12, 1880, Dr. Ludwig Flentje was the defendant

Statement of Facts.

in two pending actions instituted by Adelaide Stumpf; one a criminal prosecution in the Court of Quarter Sessions of Carbon county for fornication and bastardy; the other an action for breach of promise to marry, in the Court of Common Pleas. On that date the following agreement was executed:

This agreement made this 12th day of October A. D., 1880, between Adelaide Stumpf, of the one part, and Ludwig Flentje, of the other part, witnesseth: Whereas, the said Adelaide Stumpf has brought a prosecution against said Flentje for fornication and bastardy, which said prosecution is now pending in the Court of Quarter Sessions of Carbon county: And whereas, the said Adelaide Stumpf has also brought a suit against said Flentje in the Court of Common Pleas of said county, for breach of promise of marriage, which said suit was entered on the 11th of October, 1880, and is now pending.

Now, it is agreed between the parties as follows: The said Adelaide agrees to take and deliver her present small child into the care of Dr. Graul, at Danville, Pennsylvania; and also agrees to discontinue her present prosecution against said Flentje for fornication and bastardy and not to appear against him therein; and also further agrees to settle and discontinue the said suit of breach of promise of marriage by her brought against said Flentje in said court and acknowledges to have received full satisfaction and settlement of the same, and that she will make no further claim or demand therein against said Flentje, but hereby releases and absolves the said Flentje from all claims and demands that she may have or has had therein.

In consideration whereof, the said Flentje agrees to pay all the Record costs incurred in said prosecution and said breach of promise case, to relieve the said Adelaide from any cost or expense in the support and maintenance of said child, and to see that it is well taken care of, and further to pay to said Adelaide thirty dollars in cash, in full settlement and satisfaction of all claims and matters between them.

In witness whereof the said parties have hereto set their hands and seals the day and year first above named.

LUDWIG FLENTJE, [SEAL.]

Witness,                                    ADELAIDE STUMPF, [SEAL.]

F. BERTOLETTE.
RICHARD KIEFER.

In pursuance of this agreement the child was taken to Dr. Graul, and was by him placed in the care of Mrs. Catharine Stoll whose bills rendered for the maintenance and clothing of the child were paid by Dr. Flentje during his lifetime.

Dr. Flentje died on November 21, 1882, leaving a will dated October 14, 1882, with a codicil dated November 7, 1882, in neither of which he made any provision for the performance of said agreement for the support and maintenance of said child. On September 11, 1883, an account of the executors of said will was filed, showing a balance due the estate which was referred to Mr. JOSEPH KALBFUS, as an auditor to make distribution. At the hearing before the auditor, Miss Stumpf appeared by attorneys and claimed support and maintenance for the said child, under the agreement above quoted. The auditor, after having received evidence of the cost of supporting a child of the age of the one in question, and hearing the parties, found and reported as follows:

*First.* That the agreement proven was a valid contract, having been entered into in consideration of the settlement of the suit for breach of promise to marry, as well as the case charging fornication and bastardy, and it secured a maintenance for the child, and was not therefore the simple settlement or stifling of a criminal prosecution; that it was also continuing and bound the executors of the decedent, although they were not expressly bound by its terms.

*Second.* That, as the agreement specified no definite time during which the support was to continue or the amount of money to be advanced for that purpose, and as a parent would be liable for the support and maintenance of a child during its minority, and as in this agreement the mother was to be protected and relieved from such liability for support, the intent and purpose of the agreement were to cover at least one year of the minority of the child, or until its death, should it die before reaching the age of twenty-one years; also, that the terms, " and to see that it is well taken care of," meant and were intended to secure such a reasonable support according to the means of Dr. Flentje, as his habits of life would suggest. " Your auditor, considering the evidence as produced and his own experience, the fact that, as this child grows older it will in all probability by its own labor be enabled to supply its increasing

needs, finds that the sum of three thousand dollars should be retained in the hands of these executors, from the interest or principal of which the fixed sum of two hundred dollars shall be paid annually for the maintenance and support of said child until it arrives at the age of twenty-one years, or until its death, should it die before that time."

To a distribution based upon these findings of the auditor, the executors and devisees under the will of Dr. Flentje excepted, whereupon the Orphans' Court, S. S. Docher, P. J., after hearing, on January 16, 1885, filed an opinion saying:

" I take it, he assumed the duties of a parent by his contract, and whether the obligation was to continue during the whole period of the child's infancy, if the testator so long lived, is not now material to determine, because the testator having died, his duty and obligation of support like that of a parent of a legitimate child, ceased at his death. So long as he lived, the contract was binding on him in his relation of parent created by the contract. If the child had been the legitimate issue of the testator, he could have disinherited it." [1]

By the decree made, the claim of Adelaide Stumpf was disallowed and the report referred back to the auditor with directions to make distribution accordingly. The auditor then made a second report with distribution in accordance with the directions of the opinion and decree. Exceptions filed to this second report by Miss Stumpf were dismissed, and the report confirmed. This appeal was then taken by Miss Stumpf, who specified that the court below erred (1), in not confirming the auditor's first report, and in referring it back to the auditor with directions to disallow appellant's claim; (2), in dismissing the exceptions of the appellant to the second report and in confirming that report; (3), in ruling as in that part of the opinion filed January 16, 1885, which is quoted *supra*.[1]

*Mr. Allen Craig* (with him *Mr. James S. Loose*) for the appellant.

The contract was not personal to Dr. Flentje's executors, for they can carry it out as effectually as their testator. The ruling of the Court below is based on the assumption that this contract created the relation of parent and child between

Dr. Flentje and this illegitimate child. The contract created no such relation. Nowhere does it say that Dr. Flentje is to be a vicarious parent. He does not stipulate for any control. But suppose this contract did create that relation; does it follow that the obligation of support would cease at the death of the parent? Not if an inheritable estate were' left. True, the parent might disinherit the child; but in the absence of disinheritance, the child's share of the parent's estate would be liable to the poor authorities for support and maintenance.

That the contract is not personal, but its performance survived to the executors, the following authorities are referred to; Billing's App., 106 Penn. St. 560; White's Executors v. Commonwealth, 39 Idem 167; 1 Chit. Con., 11th Amer. ed., 138; 2 Idem 979, 1406; 3 Wms. Ex. 6th Am. ed. 1825; Add. Con., 1st Amer. ed. § 451; 1 Pars. Con. *131; 1 Whart. Con., § 323; Brown v. Mansur, 2 New Eng. R., 857.

*Mr. James Kiefer*, for the appellee.

It is apparent upon the face of the agreement that the parties contemplated no larger period than Dr. Flentje's lifetime; otherwise it is very probable it would have been provided for. The child was born in Germany, and under our bastardy laws Dr. Flentje was not liable for its support. Had he been liable, his liability extended only over seven years, and his death before that time would have released both himself and any sureties in a bastardy bond given upon conviction in the Quarter Sessions: City v. Haslitt, 14 Phila., 138; and it must be presumed that the settlement was made and the agreement drawn in view of the fact that Dr. Flentje was not legally liable, if liable at all, beyond seven years or his lifetime if he died sooner, and was to be treated as a personal contract not binding upon his executors.

Dr. Flentje by this agreement agrees to do certain things himself personally. He does not bind himself to pay any money or any bills. How he was to relieve the appellant from cost and expense was to be left to his own discretion. He might do so in a variety of ways. The executors or administrators of an obligor in a purely personal contract are not liable except for breaches committed by their testator or intestate in his lifetime: Dickinson v. Callahan's Admrs.,

19 Penn. St. 227; Bland's Admr. v. Umstead, 23 Idem 316; White's Exrs. v. Commonwealth, 39 Idem 167.

This claim is founded upon a supposed cost and expense incurred by the appellant in the support of the child; but there is no evidence that she has ever been called upon to pay one cent for its support, and it was incumbent upon the appellant to show it if it were so.

There was no error in holding that by this agreement Dr. Flentje merely assumed the place of a parent. It is the duty of a mother to support an illegitimate child, and as the decedent merely agreed to relieve the mother of this duty, he was bound for no more than she was. He assumed her place, and then exercised his right of making his will with no provision for the support of this child; in other words, he chose to disinherit it.

OPINION, MR. JUSTICE STERRETT:

The controlling question in this case, is whether the executory contract of October 12, 1880, between the testator, Ludwig Flentje, and Adelaide Stumpf, the appellant, was strictly personal to the former and ceased to be operative when he died, or whether it continued in full force and is binding on his executors.

The general rule is that, to the extent of the assets that come to their hands, the personal representatives of a decedent are responsible on all his contracts, whether named therein or not, and whether the breach occurs in his lifetime or afterwards: Add. on Con. 2nd Am. ed. 1059; 1 Pars. Con. 131; 2 Chit. Con. 11 Am. ed. 1406; 3 Wms. on Exrs. 6 Am. ed. 1825. To this general rule, however, there are several exceptions, mostly cases in the performance of which personal skill or taste is required. Where an executory contract is of a strictly personal nature, such as a contract "with an author for a specified work, the death of the writer before his book is completed absolutely determines the contract, unless what remains to be done—as, for example, the preparing of an index, etc.—can certainly be done to the same purpose by another." The obvious reason of this is that neither of the contracting parties ever contemplated that the work contracted for should be written by any other than the author himself. For like

reason, contracts by physicians to cure a patient of a particular disease, contracts by teachers and masters to instruct their pupils or apprentices, promises of marriage, etc., are exceptions to the general rule : Pars. Con. 131 ; 1 Whart. Con. sec. 323 ; Chit. Con. 11 Am. ed. 138 ; White's Ex'rs v. Com., 39 Penn. St. 167 ; Billing's Ap. 106 Idem 558.

If the sealed instrument under consideration is not within one of the exceptions to the general rule above stated, the learned judge of the Orphans' Court erred in holding that the executors of Dr. Flentje were answerable only for breaches incurred during his lifetime. There is nothing, either in the contract itself, or in the subject matter thereof, or in the relation of the contracting parties, to indicate that the testator's undertaking was intended to be strictly personal. On the contrary, everything connected with it points to a continuing contract, binding on his executors so far as not performed by him in his lifetime.

At the time the agreement was executed, a criminal information for fornication and bastardy and a civil action for breach of promise of marriage were pending in the proper courts against the testator, in one of which appellant was prosecutrix, and in the other plaintiff.

The manifest object of the parties was the compromise and settlement of both cases. Appellant on her part agreed " to take and deliver her present small child into the care of Dr. Graul of Danville, Pa." ; also to discontinue and settle the civil action as well as the prosecution, and thereby release and absolve the testator from all claims and demands that she may have against him in said cases. In consideration of which, Dr. Flentje, the testator, agreed to pay all the record costs incurred in both cases,—" to relieve the said Adelaide from any cost or expense in the support and maintenance of said child, and to see that it was well taken care of, and further to pay to said Adelaide thirty dollars in cash, in full settlement and satisfaction of all claims and matters between them."

In pursuance of this agreement, the child was given into the custody of Dr. Graul, who on behalf of testator arranged for its keeping in the family of Mr. Stoll, where it has since remained. It was claimed by appellant that in order to carry out testator's part of the agreement, according to its true in-

tent and meaning, a portion of his estate, sufficient for the purpose, should be set apart and the interest accruing therefrom applied to the support and maintenance of the child. The learned auditor being of opinion that the position thus assumed was correct, reported in favor of setting apart $3,000 to be invested under the direction of the Court, and the interest accruing therefrom, from time to time, applied to the support and maintenance of the child until it attains its majority, or during its life in case it should die before attaining the age of twenty-one years.    To this it was objected by the appellees that the agreement was strictly personal to the testator and not binding on his executors, and also that it was void, because the consideration, in part at least, was illegal, and because it is too uncertain and indefinite as to the time the child was to be supported.    The learned judge of the Common Pleas rightly held that the contract was not void for either of the reasons above stated; but he did hold, as we think erroneously, that it ceased to be operative upon the death of the testator.    Speaking of the obligation assumed by the testator, he says in his opinion sustaining exceptions to the auditor's report:   "I take it he assumed the duties of a parent by his contract; and whether the obligation was to continue during the whole period of the child's infancy, if the testator so long lived, is not now material to determine, because the testator having died, his duty and obligation of support, like that of a parent of a legitimate child, ceased at his death.    So long as he lived the contract was binding on him in his relations of parent, created by the contract.    If the child had been the legitimate issue of the testator, he could have disinherited it."

By its express terms and provisions the agreement in question has wider scope and effect than are here given to it. Bearing in mind that as mother of the illegitimate child appellant was bound to support and maintain it whether testator died during his minority or not, his agreement is, " to relieve her from any costs or expense in the support and maintenance of said child and to see that it is well taken care of." There is nothing in the agreement to limit the operation of this covenant to the lifetime of testator.    On the contrary, the circumstances which led to its execution all go to show that

its purpose was to indemnify appellant and save her harmless from all costs and expenses incident to the support and maintenance of her illegitimate offspring; and the language employed cannot be fairly construed to mean anything else. The agreement created a contract relation between appellant and the testator altogether different from the legal relation that exists between parent and child. For reasons hereinbefore suggested, we think the contract was a continuing one, binding on the executors so far as not performed by testator in his lifetime; and hence the conclusions of the learned auditor are substantially correct. The several specifications of error are therefore sustained.

> Decree reversed at the costs of the appellees and record remitted with instructions to proceed in accordance with the auditor's first report.