## Huffman, Appellant, v. Huffman.

124

Argued March 20, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank B. Quinn,* with him *Charles B. English,* of *English, Quinn, Leemhuis & Tayntor,* for appellant.

*S. L. Gilson,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 17, 1933:

For some unstated reason, Albert F. Huffman and Agnes V., his wife, "agreed to live separate and apart" from each other. At that time they had two minor children, respectively 7 and 14 years of age. For their support, the father was primarily responsible, but in case of his death or inability, that duty, under section 1012 of the Act of May 14, 1925, P. L. 762, 787, would devolve upon their mother, if she was financially able to care for them. The husband was also liable for her support, and, in adjustment of all these matters, they entered into the written agreement out of which the present controversy arises.

By it, he settled upon his wife a small property in the City of Philadelphia, and also agreed to "pay to [her] the sum of $30 on the first day of each and every month hereafter in sickness and in health for the support and maintenance of [their daughter] until such time as the [daughter] should become self-supporting." A subsequent clause contained a precisely similar agreement for the support and maintenance of their minor son. It is evident from these two clauses, though it is not specifically so stated, that from the money thus contributed by her husband, she was to support the two children, and that she would forfeit all right thereto if she did not. It is further evident therefrom that if she did support them out of those payments, her right thereto, if she lived that long, was to continue until they should "become self-supporting," and was subject to no other contingency.

Subsequently, his wife obtained a divorce from him, he remarried and later died. By his will, he left his entire estate to his second wife and she was appointed administratrix c. t. a. The will made no provision for carrying out the above-mentioned agreement for the support of his minor children, though he had regularly paid to their mother the amounts specified therein, as long as he lived. She made demand on his administratrix for the later payments, in accordance with the terms of the agreement, and, this being refused, brought the present suit against the administratrix to recover the amount due.

To the statement of claim setting up the above facts, the administratrix filed an "Affidavit of Defense in the Nature of a Demurrer," averring the agreement was unenforceable for want of a consideration to support it, and alleging that it "was personal between the plaintiff and [testator] and is not binding in any way on his administratrix." The Court of Common Pleas sustained the demurrer and entered judgment for the defendant; the Superior Court, by a majority vote, affirmed it; and the case is now before us on an appeal, which we specially allowed. The judgment must be reversed.

It is clear beyond question that the agreement has not been fully complied with, since the children are not, as yet, self-supporting. The exact situation has arisen, therefore, against which the wife sought to protect herself, and for which the agreement, in plain and unambiguous language, provided. The father being dead, she will have to support and maintain the children, if of sufficient ability, and no reason exists why testator's estate should not relieve her therefrom, in accordance with his agreement. It is idle to say there was no consideration for the agreement; no fraud or overreaching being alleged, the family settlement was, itself, ample consideration: Burkholder's App., 105 Pa. 31; Lineaweaver's Est., 284 Pa. 384; Miller v. Miller, 284 Pa. 414. It is equally idle to say that the agreement was personal

between the plaintiff and testator, or that it was intended to terminate at his death. There is nothing in the agreement, or in the surroundings of the parties at the time they made it, from which either conclusion can properly be drawn. As we said in Foundation & Construction Co. v. Franklin Trust Co. et al., 307 Pa. 10, 15: "The standard for the interpretation of words is their natural meaning to the parties who have contracted at the time and place where the contract is made, considering all the circumstances surrounding it: McMillin v. Titus, 222 Pa. 500...... Words are to be construed according to their primary acceptation unless, from the context of the instrument and the intention of the parties to be collected from it, they appear to be used in a different sense." By his agreement, testator agreed to pay the specified sums for the support and maintenance of his minor children, until they became self-supporting, and there is no other language therein which in any way otherwise limits or fixes the time during which the payments are to be made.

Many cases are cited to support the judgment appealed from, but not even one of them does so. Of course, if the true construction of the language of an agreement is that it shall continue in force only so long as the parties to it survive, it will be limited in duration accordingly, for that would, under such circumstances, be their expressed agreement. So, too, from the character of the contract itself, a limitation of time to the lives of the contracting parties might be necessarily implied, though not directly expressed. All the cases under this head fall into one of two classes, and in each the determination is so reached because a fair consideration of the language used leads to the conclusion that such must have been the intention of the parties.

The first class embraces those cases in which it clearly appeared that the personal qualities of one party to the contract constituted a potential inducement to its making. To this class belongs Blakely v. Sousa (No. 1), 197

Pa. 305, and kindred cases. To the second class belong the cases where, if only the language of the contract was considered, it would appear that the performance required would extend beyond the time during which executors and administrators are, by statute, to settle the estate in their charge, or is not consistent with their duties as such, and hence must be presumed not to have been intended. Illustrations of this are Quain's App., 22 Pa. 510, and Bland's Admr. v. Umsted, 23 Pa. 316. The instant case is not in either of these classes.

On the other hand, the relevant authorities all call for a reversal of the judgment. Perhaps the one in which the facts are most nearly like those in the instant case is Stumpf's App., 116 Pa. 33. There the putative father of a bastard child entered into an agreement with the mother to relieve her of liability for its support and maintenance, and to see that the child was well taken care of. There, as here, the court below decided that the liability under the contract ended with the life of the father; but there, as here, we disagreed with the court below and held that a portion of the father's estate should be set apart and the income thereof applied to the support and maintenance of the child. We said, pages 38, 39: "The general rule is that, to the extent of the assets that come to their hands, the personal representatives of a decedent are responsible on all his contracts, whether named therein or not, and whether the breach occurs in his lifetime or afterwards: Add. on Con., 2d Am. ed. 1059; 1 Pars. Con. 131; 2 Chit. Con., 11 Am. ed. 1406; 3 Wms. on Exrs., 6 Am. ed., page 1825. To this general rule, however, there are several exceptions, mostly cases in the performance of which personal skill or taste is required. Where an executory contract is of a strictly personal nature, such as a contract with an author for a specified work, the death of the writer before his book is completed absolutely determines the contract, unless what remains to be done—as, for example, the preparing of an index, etc.—can certainly be done to

the same purpose by another. The obvious reason of this is that neither of the contracting parties even contemplated that the work contracted for should be written by any other than the author himself. For like reason, contracts by physicians to cure a patient of a particular disease, contracts by teachers and masters to instruct their pupils or apprentices, promises of marriage, etc., are exceptions to the general rule: Pars. Con. 131; 1 Whart. Con., section 323; Chit. Con., 11 Am. ed. 138; White's Exrs. v. Com., 39 Pa. St. 167; Billing's App., 106 Idem 558.

"If the sealed instrument under consideration is not within one of the exceptions to the general rule above stated, the learned judge of the Orphans' Court erred in holding that the executors of Dr. Flentje were answerable only for breaches incurred during his lifetime. There is nothing, either in the contract itself, or in the subject-matter thereof, or in the relation of the contracting parties, to indicate that the testator's undertaking was intended to be strictly personal. On the contrary, everything connected with it points to a continuing contract, binding on his executors so far as not performed by him in his lifetime."

That case is cited in Young v. Gongaware, 275 Pa. 285, 287, where it is also said: "Where the contract may be performed by the personal representatives, or where it embodies a property right, the performance of such duty and the succession of such right to the personal representatives is generally held to be the rule of law; death does not terminate such contracts." Because it is inherently right, it is now expressly reaffirmed.

The judgment of the Superior Court and of the Court of Common Pleas is reversed and the record is remitted to the latter court with a procedendo.