Fessman Estate.

448

Argued October 2, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John A. Metz, Jr.*, with him *Metz, McClure, Hanna & MacAlister*, for appellant.

*Andrew L. Weil*, with him *R. J. Cleary, George W. McKeag, Arthur W. Lewis, Weil, Vatz & Weil, Philips, Farren & McKeag*, and *Lewis & Hutchinson*, for appellee.

OPINION BY MR. JUSTICE BELL, November 12, 1956:

The question involved may be succinctly stated: Did Fessman agree to support his son during his minority, or did the support agreement terminate on Fessman's death?

The Orphans' Court awarded the bulk of Fessman's estate to a trustee for the minor's support during minority. From this decree one of the residuary legatees appealed.

Fessman and his wife had a child, Charles Richard Fessman, who was born March 17, 1949. Mrs. Fessman, on May 24, 1949, filed a complaint in divorce a mensa et thoro. On January 18, 1951, the Court ordered Fessman to pay his wife $140. a month as alimony pendente lite. On July 27, 1951, Fessman executed a will in which he left his residuary estate to be divided equally between his parents on the one hand and Eva Puccinelli, the appellant, on the other hand. On March 18, 1952, Mrs. Fessman's complaint was amended to ask for an absolute divorce.

On July 15, 1952, Fessman executed and his attorney, Tasso E. Camarinos, sent to Mrs. Fessman's attorney, William J. Graham, the following important letter:

"July 15, 1952

Mr. William J. Graham
Attorney at Law
620 Frick Building
Pittsburgh 19, Penna.

Dear Mr. Graham:

It is understood and agreed that I will continue to pay to Minnie Fessman, the sum of $100.00 monthly payable between the 10th and 15th day of each month for the support of Charles Richard Fessman in lieu of the Order of Common Pleas Court dated January 18, 1950.* Very truly yours,

CHARLES H. FESSMAN"

---

* The parties agree that 1950 was erroneously inserted for 1951.

On July 16, 1952, without any foreknowledge on the part of the parties, the Court granted an absolute divorce to Mrs. Fessman.

Fessman made payments of $100. a month for the support of his son under and in accordance with the letter of July 15, 1952, except that at the time of his death on October 11, 1954, he was in arrears in such payments in the total sum of $580. On February 3, 1954, Fessman wrote his former wife enclosing some money to pay part of his arrearages for the support of their son and asked her to marry him. However, Fessman did not change his last will dated July 27, 1951, in which as above noted he gave Miss Puccinelli one-half of his residuary estate. Miss Puccinelli contends that the agreement for support of Fessman's son terminated upon Fessman's death, and that she was entitled to one-half of his residuary estate. The Court interpreted Fessman's letter of July 15, 1952 (in conjunction with certain oral testimony) to impose a liability upon the father to support his son during minority; and awarded to Mrs. Fessman arrearages for the support of their son, and a large sum to a trustee to pay for the support of the son $100. a month from Fessman's death on October 11, 1954.

The letter from Fessman to Graham dated July 15, 1952, promising to pay the sum of $100. monthly for the support of his son, is undoubtedly ambiguous for the reason that it is silent as to the duration of the payments. Appellant contends that parol evidence as to the intention of the parties and the duration of Fessman's obligation was inadmissible, under the well settled general rule: Where an agreement purports to contain the entire agreement between the parties, and there is no averment and proof that anything was omitted therefrom by fraud, accident or mistake, all prior ne-

gotiations and verbal agreements are merged in and superseded by the subsequent written agreement and parol evidence is inadmissible to alter, contradict, vary, subtract from or add to the written agreement: *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255. However, this general rule does not apply where the written agreement is ambiguous. In such a case parol evidence is admissible to explain the agreement and to resolve the ambiguity in order to ascertain the intention and meaning of the parties: *McCready Trust,* 387 Pa. 107, 126 A. 2d 429; *Morgan v. Phillips,* 385 Pa. 9, 122 A. 2d 73; *Lipsie v. Dickey,* 375 Pa. 230, 100 A. 2d 370; *Waldman v. Shoemaker,* 367 Pa. 587, 80 A. 2d 776.

Where a contract does not fix a definite time for the duration of the relationship or the terms or obligations which are created therein, parol evidence is admissible to show "the surrounding circumstances, the situation of the parties, the objects they apparently had in view and the nature of the subject-matter" of the agreement, *in order to ascertain the intention of the parties*: *Lipsie v. Dickey,* 375 Pa., supra; *Price v. Confair,* 366 Pa. 538, 79 A. 2d 224; *Slonaker v. P. G. Publishing Co.,* 338 Pa. 292, 13 A. 2d 48.

Mr. Graham, counsel for Mrs. Fessman, was permitted by the Auditing Judge to testify that upon receipt of Fessman's letter of July 15, 1952, he telephoned Fessman's attorney, Mr. Camarinos, who prepared the ambiguous letter, and objected to the words "in lieu of the order of Common Pleas Court dated January 18, 1950". Graham testified that he told Camarinos that the clause "in lieu of the Order of Common Pleas Court" was entirely unnecessary, since the support order (alimony order) in the Common Pleas Court was for Fessman's wife and this agreement was to be for the support of their boy during his

minority; and that Camarinos replied that his client's word was good for the support of the boy during his minority. The auditing Judge believed Graham's testimony.

The aforesaid conversation with, and admissions by, Fessman's attorney are admissible in evidence with the same force and effect as if they had been made directly by Fessman himself, since Fessman's counsel was acting within the scope of his express or implied authority to negotiate a settlement with Fessman's wife of their marital difficulties and her claims for alimony and the support of their son: *McGarity v. New York Life Insurance Co.,* 359 Pa. 308, 314, 59 A. 2d 47; *Cherry v. Mitosky, Administrator,* 353 Pa. 401, 406, 45 A. 2d 23, 26; *Truby v. Seybert,* 12 Pa. 101; *Floyd v. Kulp Lumber Co.,* 222 Pa. 257, 268, 71 A. 13, 15; Henry, Penna. Evidence, 4th Ed., Vol. 1, §96, p. 143. While Graham's testimony, like Fessman's letter, was not as clear as it could or should have been, we believe, considering the subject-matter and the objectives of the parties, that it was sufficient, taken in conjunction with Fessman's letter of July 15th, to establish that Fessman agreed to support his son during his minority.

We have not overlooked the principles of law advanced by appellant that a father, in the absence of a contract, has no legal obligation to support his children after his death, and is under no legal obligation to leave his children anything by will. However, these principles are inapplicable when a father contracts to support his child during minority; in such a case, the father's contract for support is valid and will be binding upon his estate: *Huffman v. Huffman,* 311 Pa. 123, 166 A. 570; *Stumpf's Appeal,* 116 Pa. 33, 8 A. 866.

Amended Decree affirmed; costs to be paid by appellant.