■ HELEN KEEHN, Respondent, v AKIBA KEEHN, Appellant. —In an action for a divorce and ancillary relief, the defendant husband appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Queens County (Corrado, J.), dated February 2, 1987, as (1) awarded exclusive possession of the marital residence to the plaintiff wife until Jay, an infant child of the marriage, becomes 21 years of age or is sooner emancipated, (2) directed that at the time of the sale of the marital residence the sum of $8,000 be paid to the plaintiff's

parents from the gross proceeds and thereafter the net proceeds be divided equally between the plaintiff and the defendant, and (3) directed the defendant to (a) pay to the plaintiff within 30 days of service of a copy of the judgment with notice of entry the sum of $12,851.66 as a distributive award in lieu of a 50% interest in the defendant's annuities, (b) pay child support in the amount of $100 per week for each of the three children of the marriage with such payments to continue until each child reaches the age of 21 years or is sooner emancipated, (c) pay all private school and college tuition for the children of the marriage as well as all tuition arrears, (d) pay all reasonable unreimbursed medical expenses for the children of the marriage, (e) maintain a life insurance policy in the sum of at least $200,000 on his life naming the children of the marriage as irrevocable beneficiaries until such time as they are fully emancipated, (f) pay to the plaintiff $125 per week as maintenance for a period of seven years, and (g) pay the sum of $9,000 to the plaintiff's attorney at the rate of $1,000 per month commencing 30 days after entry of judgment.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting so much of the fifth decretal paragraph as directed that the sum of $8,000 be paid to the plaintiff's parents or their heirs from the gross proceeds of the sale of the marital home, (2) deleting so much of the tenth decretal paragraph as directed the defendant to pay all college tuition for the three children of the marriage, (3) deleting so much of the eleventh decretal paragraph as directed the defendant to pay college tuition arrears for the three children of the marriage, (4) deleting the fourteenth decretal paragraph which directed the defendant to pay all reasonable unreimbursed medical expenses for the children of the marriage, and (5) by reducing the amount of the life insurance policy that the defendant must maintain under the fifteenth decretal paragraph from $200,000 to $100,000; as so modified the judgment is affirmed insofar as appealed from, without costs or disbursements.

The defendant and the plaintiff were married in June 1965 and divorced in May 1984. There are three children of the marriage: David, born in June 1967; Ari, born in August 1968; and Jay, born in February 1973.

The defendant is employed as the director of systems procedures and computer operations at Maimonides Hospital and had a base salary of $64,500 in 1986. In addition to the defendant's salary, a sum equal to 10% of his base pay is placed in an annuity fund by Maimonides Hospital in lieu of a

pension. The annuity fund provides that the defendant may make withdrawals prior to his retirement. The defendant also teaches on a part-time basis at La Guardia Community College and testified that he expected to earn approximately the same salary in 1985 as he did in 1984, which was $11,281.

The plaintiff graduated in 1965 from the Fashion Institute of Technology with an associate degree in design. At the time of the 1965 marriage the plaintiff was employed as an assistant children's wear designer at a salary of $125 per week. In April 1967 the plaintiff stopped working in order to raise a family. In 1982 the plaintiff reentered the work force as a clerical employee for a fabrics manufacturing company. The plaintiff had been unable to find employment as a designer. Later that same year the defendant moved out of the marital home. In 1984 the plaintiff earned a salary of $18,000 from her clerical position but in September 1985 she was terminated from her position. Attempts to find new employment proved unsuccessful, and the plaintiff's search was further hampered by the mysterious blindness of her eldest son, David, in December 1985. The plaintiff testified at trial that David required 24-hour attention and his rehabilitation period would be "close to two or three years".

Under the circumstances of this case we find that the award of maintenance of $125 per week for a period of seven years from the date of judgment or until the death or remarriage of the plaintiff, whichever comes sooner, was neither excessive in amount nor unreasonable in duration (see, Hillmann v Hillmann, 109 AD2d 777). In addition, we find the court did not abuse its discretion in awarding child support in the amount of $100 per week per child until each child reaches the age of 21 years or upon his emancipation, whichever is sooner. Recognizing the fact that the need of the defendant to maintain a separate household and have money to live on after support payments are made must be taken into account by the awarding court (see, Matter of Flanter v Flanter, 123 AD2d 626), we find that the support and maintenance payments will not prevent the defendant from meeting his personal needs.

The defendant correctly argues that his obligation to provide child support and maintenance ceases upon his death. Domestic Relations Law § 236 (B) (1) (a) specifically defines maintenance as "payments provided for in a valid agreement between the parties or awarded by the court in accordance with the provisions of subdivision six of this part, to be paid at fixed intervals for a definite or indefinite period of time, *but an award of maintenance shall terminate upon the death of*

*either party"* (emphasis added; *see also,* Domestic Relations Law § 236 [B] [6] [c]). Although the statutory definition of "child support" does not address the issue of termination upon the death of the paying parent *(see,* Domestic Relations Law § 236 [B] [1] [f]), it has been held that "there is no common-law or statutory obligation on the part of a parent for the support of his child after his death; and, absent agreement, the court is powerless to provide in a judgment that the husband shall continue payment for the support of his child after death *(Flatto v Flatto,* 59 AD2d 695; 2 Foster and Freed, Law and the Family, § 23:12)" *(Chiaramonte v Chiaramonte,* 106 Misc 2d 822, 825). Contrary to the defendant's contention, however, we find that the judgment need not be modified to reflect that the defendant's obligation to provide child support and maintenance shall terminate upon his death since the judgment does not provide that such payments are to be made by the defendant's estate.

We find that the court's distribution of the marital property was equitable *(see,* Domestic Relations Law § 236 [B] [5] [c]; *Shahidi v Shahidi,* 129 AD2d 627).

The direction that the $12,851.66 lump-sum distributive award (in lieu of a 50% interest in the defendant's annuities) be paid within 30 days of service of a copy of the judgment with notice of entry was proper since the record supports a finding that the defendant has sufficient means to pay such a lump-sum award *(see, Tereszkiewicz v Tereszkiewicz,* 128 AD2d 605, 606).

We find that the award of exclusive possession of the marital residence to the plaintiff until the youngest child of the marriage attains the age of 21 or is sooner emancipated was proper *(see, Damiano v Damiano,* 94 AD2d 132, 135). It was, however, improper for the court to direct that the sum of $8,000 be paid to the plaintiff's parents from the proceeds from the sale of the marital home. There is insufficient evidence to support a finding that at the time the plaintiff's parents transferred title to the marital residence to the plaintiff and the defendant in 1969, the plaintiff and the defendant promised to repay $8,000 which was the amount the plaintiff's parents allegedly paid in 1967 as a down payment on the marital home.

We further find that it was error for the court to direct the defendant to pay all reasonable unreimbursed medical expenses for the children since such payments are in the nature of improper, open-ended obligations *(see, Armando v Armando,*

114 AD2d 875; *see also, Scheer v Scheer,* 130 AD2d 479; *Weinstein v Weinstein,* 125 AD2d 301). Our decision, however, does not preclude the plaintiff from applying to the Supreme Court or the Family Court for any extraordinary medical treatment for the children of the marriage *(see, Armando v Armando, supra; Troiano v Troiano,* 87 AD2d 588).

The court also directed the defendant to pay the college tuition of all three children of the marriage. This court has stated that, "[a]bsent 'special circumstances', or a voluntary agreement, the furnishing of a private school college education to one's minor children is not regarded as a necessary expense for which a father can be obligated (see *Matter of Hawley v Doucette,* 43 AD2d 713, 714; *Halsted v Halsted,* 228 App Div 298, 299). The factors relevant to the determination of 'special circumstances' are threefold: (1) the educational background of the parents; (2) the child's academic ability; and (3) the father's financial ability to provide the necessary funds" *(Kaplan v Wallshein,* 57 AD2d 828, 829; *see also, Antis v Antis,* 108 AD2d 889). Based upon the circumstances of this case we find that the defendant's financial status is not such that he should be directed to pay the college tuition of his children. In addition, we note that at the time of the judgment the defendant's youngest son, Jay, was only 14 years of age and, therefore, the order directing the defendant to pay Jay's college tuition was premature since "college is several years away, and no evidence was presented as to his academic interest, ability, possible choice of college, or what his expenses might be" *(Matter of Whittaker v Feldman,* 113 AD2d 809, 811).

However, we find that it was proper for the court to direct the defendant to pay the expenses of his children's private schooling. Ordinarily, a parent " 'should not be compelled, over his [or her] objection to pay for private schooling where "the community makes available to children through the public school system the education which each child is entitled to as a matter of course" ' " *(Matter of Ladner v Iarussi,* 92 AD2d 895, quoting from *Gartin v Gartin,* 64 AD2d 600). Yet tuition has been awarded, when practical, where it was warranted by the educational background of the parents and history of the child *(see, e.g., Kaplan v Wallshein, supra)* or special needs or circumstances of the child *(see, e.g., Benson v Benson,* 79 AD2d 694). Here, the court properly found that "religious values and education were an integral part of the family life-style and value structure" *(Valente v Valente,* 114 AD2d 951). In light of the family's emphasis on religious

training and the fact that the defendant has provided private religious education for his children in the past, we find that it was proper to direct the defendant to continue to pay for such education until each child graduates from high school.

We find that the court did not abuse its discretion in directing the defendant to pay to the plaintiff's counsel the sum of $9,000 in attorney's fees *(see,* Domestic Relations Law § 237; *Scheer v Scheer, supra).* However, the court should have required the defendant to maintain a life insurance policy of $100,000 instead of $200,000.

We have examined the defendant's remaining contentions and find them to be without merit. Mangano, J. P., Brown, Harwood and Balletta, JJ., concur.