830 A.2d 966

**Cheryl BENSON, on Behalf of Wiley Stanley PATTERSON, Jr., a Minor, and Leona C. Lewis, on Behalf of Aaron Patterson, a Minor, Appellants**

**v.**

**Danita C. PATTERSON, Executrix of the Estate of Wiley Stanley Patterson, Deceased, Appellee.**

Supreme Court of Pennsylvania.

Argued May 16, 2002.

Decided Aug. 26, 2003.

Timothy Mark Anstine, Harrisburg, for Cheryl Benson and Leona C. Lewis, appellants.

James Harry Turner, Harrisburg, for Danita C. Patterson, appellee.

Before: ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice EAKIN.

Wiley Stanley Patterson fathered five children, two of whom were born out of wedlock;  Wiley Stanley Patterson Jr., born to Cheryl Benson on March 25, 1984, and Aaron Patterson, born to Leona Lewis on September 10, 1991.  Stanley and Aaron are in the custody of their mothers;  while support orders were entered requiring him to pay child support for

Stanley and Aaron, Patterson never made payments during his life.

Patterson was injured in an automobile collision, and received a $2.5 million settlement from a subsequent lawsuit. Soon afterward, Patterson made a will, making cash bequests to Stanley, Aaron, and his three other children. The residue of his estate was left to his sister, who was named executrix.

Patterson died of cancer August 1, 1999. The support orders were terminated; the estate satisfied all arrearages. The mothers of Stanley and Aaron filed an action in the Dauphin County Orphans' Court,[1] seeking continuation of support payments until their children reach the age of majority. In addition, the mothers sought an increase in the amount of support due to two changes in circumstances: Patterson's receipt of the personal injury settlement, and his death. Relying on *Garney v. Estate of Hain*, 439 Pa.Super. 42, 653 A.2d 21 (1995), the Orphans' Court dismissed the complaints, finding no legal basis for imposing a duty of support on the estate of a deceased parent.

In *Garney*, a custodial parent disinherited three minor children and left his estate to his new wife. The mother with custody of the children filed for child support against the estate. The Superior Court held there was no statutory authority for imposing the duty of support upon the estate of the decedent. *Id.*, at 22. Patterson's children attempt to distinguish *Garney* because there were support orders in place against Patterson before his death; they argue an obligation of support existed in this case that was not present in *Garney*. The Superior Court, however, found this created no significant distinction between the two cases, as a parent

---

1. These complaints were improperly filed with the Orphans' Court; support actions must "be commenced by filing a complaint with the domestic relations section of the court of common pleas." Pa.R.C.P. 1910.4. The trial court did not address this "procedural irregularity" as "the Estate did not object to or request a transfer to the appropriate division." Trial Court Order, 4/20/00, n. 1. Although the case should have been transferred, there are no objections and no factual disputes, and we, too, will not resolve the case on this procedural error. *See* 20 Pa.C.S. §§ 711, 712.

has a duty to support minor children even in the absence of a court order. *See* 23 Pa.C.S. § 4321. Concluding *Garney* controls, the Superior Court affirmed the Orphans' Court. This Court granted allocatur to consider whether a minor child may seek continued support from the estate of a deceased parent, and if so, whether the estate's obligation should be determined in accordance with the support guidelines. *Benson v. Patterson*, 567 Pa. 469, 787 A.2d 971 (2002).

Patterson's children urge us to apply principles of statutory law to impose a duty to support upon the estate;[2] *see generally* 20 Pa.C.S. §§ 101–8815. However, "it is not the role of the judiciary to legislate changes in the law which our legislature has declined to adopt." *Garney*, at 21. In recent years, the legislature has expanded the duty of parents to support their minor children. While the common law duty of a parent to support a child was originally conditioned on receiving love, affection, and assistance from the child, *Gross v. Oeler*, 527 Pa. 532, 594 A.2d 649, 651 (1991), the conditional nature of the obligation no longer exists; the General Assembly has made the duty of parents to support their minor children "well nigh absolute." *Sutliff v. Sutliff*, 339 Pa.Super. 523, 489 A.2d 764, 771 (1985); 23 Pa.C.S. § 4321(2). Pennsylvania has extensive support legislation, *see id.*, at §§ 4101–4396, and judicially enforced support guidelines, *see* Pa.R.C.P. 1910.1–1910.50; however, the legislature has declined to extend the duty of support to the estates of deceased parents. No statute has directly or inferentially extended the obligation of support beyond the death of the parent. *Garney*, at 21.

When presented with a request to expand a parent's duty of support in *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), this Court stated:

Under the Common Law, a parent had a duty to support a minor child. In its wisdom, our General Assembly has bestowed adulthood on minor children at age 18. Conse-

---

**2.** When determining the proper interpretation and interplay of statutes, a question of law is implicated. *C.B. v. Dep't of Pub. Welfare*, 567 Pa. 141, 786 A.2d 176, 180 (2001). Thus, our standard of review is plenary. *Id.*, at 180–81.

quently, the common law duty to support a minor child must by necessity cease at age 18.... Accordingly, since no legal duty has been imposed by our legislature, nor have we developed such a duty by our case law, we decline to do so. Since our legislature has taken an active role in domestic matters through amendments and reenactment of the Divorce Code and the Domestic Relations Act, we feel the more prudent course is to await guidance from that body rather than creating duties and obligations by judicial pronouncement.

*Id.,* at 632.

We apply the same reasoning to the case at bar. A child's needs do not end when a parent dies, but as sympathetic a fact as this may be, there are other considerations in the law, and it is clear we must defer to the legislature, which has taken an active role in developing the domestic relations law of Pennsylvania. *Garney* was decided in 1995. The General Assembly could have responded to the holding in *Garney,* (as it did in *Blue*), by amending the domestic relations and estate statutes; it has not done so, and it is not the role of the judiciary to legislate changes the legislature has declined to adopt.

Patterson's children point to a number of states that require the estate of a parent to satisfy child support obligations. We have extensively reviewed the laws of our sister states and find the majority of jurisdictions have held, in the absence of a contract or an express provision in a judicial decree (e.g., divorce decree, child support order), that the duty to support minor children ends at death. *See Pittman v. Pittman,* 419 So.2d 1376, 1381 (Ala.1982) (child support payments are not vested rights; instead, they provide periodic allowances until terminated); *Flagler v. Flagler,* 94 So.2d 592, 594 (Fla.1957) (*en banc*) (only legislature has authority to enact laws imposing such a duty); *Foskey v. Foskey,* 257 Ga. 736, 363 S.E.2d 547, 548 (1988) (periodic payment of alimony and child support terminates at death of obligor); *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56, 67 (1972) (separation agreement must expressly state duty survives death of obligor); *Bowling v. Robinson,* 332 S.W.2d 285, 287 (Ky.1960) (death of obligor

terminates support obligation, unless there is provision to contrary in agreement or judgment); *Wooddy v. Wooddy*, 258 Md. 224, 265 A.2d 467, 472 (1970) (without statutory authority or contract, courts have no right to adjust property rights of individuals); *Smith v. Smith*, 349 So.2d 529, 531 (Miss.1977) (child support terminates upon death of father unless written agreement binds estate); *Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731, 750 (1950) (obligation of support terminates at death of parent); *Bailey v. Bailey*, 86 Nev. 483, 471 P.2d 220, 223 (1970) (statute allows approval and imposition of extended duty of support, but duty will not be imposed unless contracted for before death); *Dupuis v. Click*, 135 N.H. 333, 604 A.2d 576, 579 (1992) (support payments terminate at death because they are not debts against estate recoverable by judgment creditor); *Keehn v. Keehn*, 137 A.D.2d 493, 524 N.Y.S.2d 238, 241 (N.Y.App.Div.1988) (no common law or statutory duty to impose obligation of support on parent post-mortem); *Mullen v. Sawyer*, 277 N.C. 623, 178 S.E.2d 425, 428 (1971) (contract entered into created obligation to support children after death); *Abrego v. Abrego*, 812 P.2d 806, 812–13 (Okla.1991) (child support accruing after parent's death is not required to be secured); *Streight v. Estate of Streight*, 226 Or. 386, 360 P.2d 304, 306 (1961) (extended duty of support to children with support orders would place those children in preferred status over children of intact marriage); *Kennedy v. Kennedy*, 270 S.C. 358, 242 S.E.2d 417, 418 (1978) (common law duty to support one's children ends with death); *Brandon v. Brandon*, 175 Tenn. 463, 135 S.W.2d 929, 930 (1940) (child support ends upon death of obligor); *Colombo v. Walker Bank & Trust Co.*, 26 Utah 2d 350, 489 P.2d 998, 1000 (1971) (divorce decree must specifically state duty shall survive death of obligor); *Scudder v. Scudder*, 55 Wash.2d 454, 348 P.2d 225, 227 (1960) (child support operates *in personam*, and will not survive death of parent without express language in judicial decree).

Some states have found circumstances where the estate of a deceased parent may be ordered to pay support for a child. *See Newman v. Burwell*, 216 Cal. 608, 15 P.2d 511, 513 (1932) (obligation to support minor children fixed by property settle-

ment or confirmed by divorce decree, is enforceable as charge against parent's estate); *L.W.K. v. E.R.C.*, 432 Mass. 438, 735 N.E.2d 359, 363–64 (2000) (parent is not free to exercise testamentary discretion until legal obligation to support minor children is satisfied); *West v. West*, 241 Mich. 679, 217 N.W. 924, 926 (1928) (duty to support minor children is common law obligation which becomes enforceable by court in case of divorce and amendable to give it effect of lien upon estate); *Garber v. Robitshek*, 226 Minn. 398, 33 N.W.2d 30, 34 (1948) (if judgment of divorce manifests intention support is to survive death of parent, then it will be enforceable); *Hornung v. Estate of Lagerquist*, 155 Mont. 412, 473 P.2d 541, 545 (1970) (father's obligation of support, required by divorce decree, survived his death and was enforceable); *Spencer v. Spencer*, 165 Neb. 675, 87 N.W.2d 212, 220 (1957) (where divorce decree provides for payment of support, it survives death of parent because such payments become vested in payee as they accrue); *Kiken v. Kiken*, 149 N.J. 441, 694 A.2d 557, 562 (1997) (by statute, estate is responsible for parent's obligation of support to children); *Hill v. Matthews*, 76 N.M. 474, 416 P.2d 144, 146 (1966) (court-ordered child support claim may be brought in probate court seeking enforcement against parent's estate); *Fox v. Burden*, 603 N.W.2d 916, 925 (S.D.1999) (child support obligation should survive death); *Scott v. Wagoner*, 184 W.Va. 312, 400 S.E.2d 556, 560 (1990) (court may enforce child support as lien against parent's estate when compelling equitable considerations exist); *Caldwell v. Caldwell*, 5 Wis.2d 146, 92 N.W.2d 356, 365 (1958) ("[T]he court may, in a proper case, require the father or his estate to provide for the support of a minor child after the father's death if that should occur while such support is otherwise in order."); *Edelman v. Edelman*, 65 Wyo. 271, 199 P.2d 840 (1948) (court ordered child support payments survive parent).

Despite the allure of the minority position, there is soundness in the majority as well, and we are guided by hundreds of years of Pennsylvania precedent instructing that a child is owed no support from a dead parent. Accordingly, we remain with the majority of states that do not extend the duty of

support for minor children to the estate of the parent. Because we decline to impose a duty of support on Patterson's estate, there is no reason to decide whether such an order would be determined according to the support guidelines.

Order affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Chief Justice CAPPY files a concurring opinion in which Justice NIGRO joins.

Justice NEWMAN files a dissenting opinion.

Chief Justice CAPPY concurring.

I join the majority opinion insofar as it holds that this court has chosen to await guidance from the General Assembly with regard to imposing a duty upon the estate of a deceased parent to continue child support in these circumstances, rather than create a duty by judicial pronouncement. *See Blue v. Blue,* 532 Pa. 521, 616 A.2d 628, 632 (1992).

Justice NIGRO joins this concurring opinion.

Justice NEWMAN dissenting.

I disagree with the conclusion of the Majority that the obligation to comply with a child support order terminates upon the death of the parent. For the reasons set forth in this Opinion, I respectfully dissent.

I believe that the Majority improperly relies upon the Superior Court's decision in *Garney v. Estate of Hain,* 439 Pa.Super. 42, 653 A.2d 21 (1995), *appeal denied,* 541 Pa. 626, 661 A.2d 873 (1995), to support its conclusion that Appellants are not entitled to receive support for their minor children. In *Garney,* there was neither a court order nor an agreement for support of the decedent's three children. Where there is an existing support order, as in the instant matter, I believe it is appropriate to look for guidance to the case law of this Court regarding situations where there is a support agreement in place at the time of the obligor's death. In *Stumpf's Appeal,* 116 Pa. 33, 8 A. 866 (1887), Dr. Ludwig Fletje (Dr.

Fletje) and Adelaide Stumpf (Adelaide) entered into an agreement on October 12, 1880, in which Dr. Fletje agreed "to relieve the said Adelaide from any cost or expense in the support or maintenance" of the parties' illegitimate child. *Id.* at 868. Dr. Fletje died on November 21, 1882, leaving a will that made no provision for the support of his son. The Orphans' Court of Carbon County determined that the contract was binding upon Dr. Fletje only as long as he lived. On appeal, this Court reversed and held that the agreement required that the decedent's executors were obligated to support the child until he reached his majority. We noted that "[t]he general rule is that, to the extent of the assets that come to their hands, the personal representatives of a decedent are responsible on all his contracts, whether named therein or not, and whether the breach occurs in his life-time or afterwards." *Id.* (citations omitted).

In *Huffman v. Huffman*, 311 Pa. 123, 166 A. 570 (1933), husband and wife agreed to live separate and apart, and husband agreed to provide wife with support of $30.00 per month for each of their two minor children until they became "self-supporting." Wife obtained a divorce from husband, and husband remarried. He subsequently died, leaving a will in which he bequeathed his estate to his second wife, who was appointed administratrix. When the children's mother demanded support payments from the administratrix, she refused, thus leading to a lawsuit. The Court of Common Pleas of Erie County held that the agreement was not binding upon the estate. The Superior Court affirmed, but this Court reversed based upon the holding of *Stumpf's Appeal.*

*Estate of Fessman*, 386 Pa. 447, 126 A.2d 676 (1956), presented this Court with a similar situation. In 1949, wife gave birth to a child and, shortly thereafter, she filed a divorce complaint against husband. In January of 1951, the Court of Common Pleas of Allegheny County directed husband to pay wife $140.00 per month as alimony pendente lite. Six months later he executed a will in which he left his residuary estate to his parents and another individual. On July 15, 1952, husband wrote a letter to counsel for wife stating that he would pay wife $100.00 per month for the support of the parties' son. The

trial court granted a divorce to the parties the following day. After husband's death on October 11, 1954, wife brought an action against husband's estate for continued support of the child. Based on parol evidence, the trial court determined that Husband agreed to provide for his son's support during his minority. Relying upon *Huffman* and *Stumpf's Appeal,* this Court affirmed.

In the aforementioned cases involving written agreements, the Court has not hesitated to find that parents expected the support of their children to be an obligation of their estates. When a support order is in place at the time of the death of a parent, it must be enforceable against an estate. A support order is a judicially imposed obligation to provide a specific amount of support calculated pursuant to the Rules of Civil Procedure, which are promulgated to effectuate the goals of the Domestic Relations Code. Once a support order is entered, I believe that it should be treated like any other obligation, and the minor child should be able to make a claim against the estate of the payor as would any other creditor. Confronted with the option of analogizing a support order to a support agreement, *see Estate of Fessman; Huffman,* and *Stumpf's Appeal,* or to a situation where there is no support agreement, *see Garney,* the former is the wiser and more equitable choice. Accordingly, I would refuse to extend *Garney* to the instant matter, and would reverse the decision of the Superior Court.

Section 4321(2) of the Domestic Relations Code, 23 Pa.C.S. § 4321(2) provides that parents are liable for the support of their children who are unemancipated and are eighteen years of age or younger. The statute does not address whether this obligation terminates at death. This is in marked contrast to Section 3707 of the Domestic Relations Code, 23 Pa.C.S. § 3707, which provides that an obligation to pay alimony shall cease upon the death of the payor "unless otherwise indicated in an agreement between the parties or an order of court." In the absence of specific direction regarding the effect of the death of the child support obligor, we look to the Statutory Construction Act, which directs us to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). Where the words of a statute are free from ambiguity, the

legislative intent is to be gleaned from those words. 1 Pa.C.S. § 1921(b). However, where the statute is not explicit, courts may look to, among other factors, the occasion and necessity for the statute, the mischief to be remedied, and the object to be attained. 1 Pa.C.S. § 1921(c). *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84 (1995). Support statutes are to be construed liberally to effect their objects and to promote justice. *Young v. Young,* 507 Pa. 40, 488 A.2d 264 (1985). As Judge Del Sole, now President Judge Del Sole, noted in his dissenting opinion in *Garney,* various sections of the support law allow us to infer that the legislature intends for the estate of parents to serve as a source of support for minor children:

> While courts always had the power to direct wage attachments, current law makes attachment of income routine, rather than elective. 23 Pa.C.S.A. § 4348. In addition to regular support payments, a parent may also be ordered to pay a portion of the child's medical expenses. 23 Pa.C.S.A. § 4326. The legislature has provided for the collection of support payments from a parent who resides outside of the Commonwealth by enacting The Revised Uniform Reciprocal Enforcement of Support Act which provides for the extradition of a parent back to the state where that parent has been charged criminally for failing to comply with a child support order. 23 Pa.C.S.A. § 4501 et seq. Also, a recently enacted statute directs licensing agencies or authorities, upon a court's Order, to deny the issuance, or renewal of a license to engage in a "profession, trade or business" where a parent has failed to make support payments. 23 Pa.C.S.A. § 4355. Most interestingly for our purposes, entireties property can be used to enforce a support obligation against a spouse. 23 Pa.C.S.A. § 4361 et seq. Even lottery winnings are subject to use for payment of support orders. 23 Pa.C.S.A. § 4308. These statutes establish that the law has become increasingly forceful in its efforts to provide for the support of minor children.

*Id.* at 22–23 (Del Sole, J., dissenting). As further evidence of legislative intent, Appellants note that support obligations constitute a judgment against the obligor with the full force,

effect and attributes of a judgment of court. 23 Pa.C.S. § 4352(d). In addition, support arrearages operate as a lien on an obligor's real property. 23 Pa.C.S. § 4352(d.1). Viewed in its entirety, the aforementioned statutes indicate a decided legislative intent to require parents to fulfill their financial obligations toward their children. Accordingly, I disagree with the Majority that legislative silence evinces intent not to permit children to make a claim for support against the estate of a deceased parent.

If the analogy between a support order and an agreement is insufficient to distinguish the instant matter from *Garney,* then a more comprehensive approach may be required. We recognize that, in dicta, this Court stated in *Estate of Fessman,* 126 A.2d at 678, "[w]e have not overlooked the principles of law advanced by Petitioner that a father, in the absence of a contract, has no legal obligation to support his children after his death, and is under no legal obligation to leave his children anything by will." Pursuant to the common law, death terminates the responsibility to support one's children. Appellants argue that much has changed since the development of such rule, noting that at early common law, children were under the complete control of their father, and that in the rare case of divorce, children were placed in their father's custody. In this situation it was highly unlikely that a father would disinherit his minor child. However, once it became common for children to be placed in the custody of their mother following divorce, the possibility that a father would disinherit his children became more likely. The prevalence of divorce and the number of families with unwed parents living in separate households also increased the possibility of parents failing to provide for their minor children in the event of a parent's death. Importantly, Appellants do not seek to impinge on the testamentary freedom of the decedent. Rather, they seek recognition of the right of minor children to obtain support from the estate of a deceased parent, thus placing minor children on the same footing as any other creditor. Such recognition would require that we change the common law.

In recognition of the importance that society places on the obligation of parents to support their children, Appellants

assert that this Court should adapt the common law to allow minors to seek support from the estate of a parent. In support of this position, they rely upon *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981), in which we abolished the defense of interspousal immunity as a bar to tort actions, noting:

> This Court has full authority, and the corresponding duty, to examine its precedents to assure that a rule previously developed is not perpetuated when the reason for the rule no longer exists and when application of the rule would cause injustice. On previous occasions, this Court has not hesitated to reconsider precedent in light of current social conditions and public policy.

*Id.* at 867. *Hack* relied upon numerous decisions where this Court changed the common law, including *Soffer v. Beech,* 487 Pa. 255, 409 A.2d 337 (1979) (abandoning common law rule that actual possession is prerequisite to an action in ejectment); *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979) (abandoning per se rule disqualifying testimony of the spouse of a surviving interested party to a transaction with a decedent); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abrogating parental immunity); *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964) (rejecting lex loci conflicts of law rule). Because I believe that the instant matter can be resolved by making an estate responsible for a support order that existed at the time of the obligor's death, I would not use this case as the vehicle by which to impose a general obligation of child support on the estate of all parents of minor children. Nevertheless, presented with the appropriate set of facts, I would not summarily reject a call to this Court to abandon a rule of law that allows a parent to leave a minor child in a state of penury while bestowing his or her bounty upon others. Effecting such a change to the common law would overrule the decision of the Superior Court in *Garney,* which the majority relies on in this case. Because I have serious doubts regarding the soundness of *Garney,* where the court refused to find a support obligation in the absence of a specific legislative directive, I believe that a reexamination of this issue would be welcome. In light of the existing statutory

scheme that emphasizes the importance of providing basic support to children, I do not believe that *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), in which this Court held that we would not create a parental obligation to pay for college expenses absent specific direction from the legislature, controls the instant matter. The distinctions between child support for minors and college expenses for children, who are usually at least eighteen years old, render *Blue* inapplicable to this case.

Therefore, I would reverse the decision of the Superior Court and remand the matter to the Orphans' Court to enter an appropriate award of support against the Estate of Wiley Stanley Patterson. I would direct the court's attention to 20 Pa.C.S. § 3387, which provides that when a claim "is not due but is certain to become due," the court may award "the present value of the claim, as agreed to by the claimant and the personal representative" or may order "the personal representative to retain or pay into the court sufficient assets to pay on maturity the claim of the whole amount then due. . . ."