FRANCES SAMUELS, Respondent, v LUIS N. VENEGAS, Appellant.

First Department, March 19, 1987

### APPEARANCES OF COUNSEL

*Michael N. Klar* of counsel *(Blodnick, Pomeranz, Schultz & Abramowitz, P. C.,* attorneys), for appellant.

*Michael F. Grossman* of counsel *(Deborah B. Kahn* with him on the brief; *Bondy & Schloss,* attorneys), for respondent.

### OPINION OF THE COURT

ASCH, J.

Plaintiff Mrs. Samuels and defendant Mr. Venegas were divorced pursuant to a judgment entered on October 22, 1974, and their separation agreement, dated March 19, 1974, was incorporated but not merged in that divorce decree. Pursuant to the separation agreement, the plaintiff was given custody of the two children, David born in 1968 and Jonathan born in 1972. Defendant, who worked for IBM, agreed to pay child support to the plaintiff based upon his adjusted gross income. Pursuant to this agreement, child support would be 22½% of the first $18,000 of defendant's income, 12½% of the next $12,000 and 10% of all income in excess of $30,000. The defendant also would maintain health coverage for the children and pay all of their medical and dental expenses.

Defendant has been employed by IBM for about 20 years.

He was earning approximately $14,000 when the parties married and $24,000 when the separation agreement was signed. At the time this action was commenced, he was earning approximately $52,000 per year and at the end of 1983 his gross annual earnings were some $57,000.

Plaintiff, a college graduate, was a full-time teacher in Yonkers for a short time between 1964 and 1967 and returned to teaching part time after the parties' divorce, earning between $6,000 and $7,000 per year between 1976 and 1979. She has not worked outside of the home since then.

In 1980, plaintiff and her second husband bought a 10-room home for $180,000 in Great Neck, Long Island, where David and Jonathan attend the local public schools. Plaintiff contributed her sole asset, a $16,000 legacy from her mother, towards the purchase price. She and her second husband employ a "live-in" housekeeper. One of the five bedrooms in the home is occupied by the husband's two teen-age sons, from his first marriage, on their frequent visits. A daughter was born to the plaintiff in November 1980. Plaintiff conceded that her second husband is earning over $100,000 per year.

Defendant married a fellow employee of his at IBM, who, as a marketing specialist, earned $87,000 in 1982 in addition to nearly $4,000 in dividend and interest income. The couple drives two cars, both owned by the wife.

At the beginning of their marriage, defendant and his second wife lived in her cooperative apartment. In October 1982, the wife purchased, in her own name, a four-bedroom house in Stamford, Connecticut, where the couple resides. She made a $39,000 down payment from the $76,550 net proceeds of the sale of her co-op apartment and has since paid the entire monthly mortgage payments of $1,610 herself. Defendant asserted that he pays one half of the annual cost of maintaining the Stamford home, which is approximately $4,440.

Soon after their marriage, defendant and his second wife jointly purchased a large old house in Massachusetts for $64,000, each contributing one half of the $13,000 down payment. Defendant paid his share from the proceeds of a $15,000 loan he made from the IBM Credit Union, using the balance to pay off old debts. He also testified that in 1982 he paid one half of the basic fixed expenses on the house (approximately $6,000) and one half of the cost of maintenance and repairs (approximately $8,400) from his deposits in a joint checking

account. The Massachusetts premises are used on weekends throughout the year and defendant spends a great amount of time there with David and Jonathan.

Defendant took a second $15,000 loan from the IBM Credit Union in October 1982 and applied $12,000 of this amount towards the purchase, in his wife's name, of two acres of unimproved land adjacent to the Massachusetts property "in order to protect their investment there". (As of April 1983, he still owed $11,000 on the 1979 loan.) He has been repaying the consolidated loan at the rate of $300 per paycheck, or $7,200 annually, since late 1982. Withdrawals have also been made from his salary at the rate of 10% per paycheck over the past several years by the IBM Stock Purchase Plan. He now holds over 200 shares of IBM stock, which are pledged as collateral against his indebtedness. In 1982, he received dividends of $378 on those shares. Plaintiff and defendant jointly own 144 shares of IBM in trust for their children.

The defendant testified before the Referee regarding his personal expenses, the major ones being for food $3,000 (including $1,200 for "eating out"), clothing $1,200, gasoline $1,040, vacations (with his wife) $996, life insurance $408, and $5,578 spent for the boys, over and above his support obligations, including $1,600 for food ($1,020 of that for "eating out"), $921 for skiing and ski equipment, $600 for entertainment, $280 for hockey equipment, $416 and $760 spent on sending them to a baseball camp for one week in August 1982. Thus, in 1983, when defendant's income was $57,000, his total expenditures on behalf of the children were in excess of $13,000 plus medical and dental expenses.

Plaintiff sought an upward modification in child support pursuant to paragraph 9 of the separation agreement, which provides that, "[i]n the event of changed circumstances, either the husband or the wife may move to modify this Agreement." She claimed that the escalation clause under which defendant has been paying support over the past 10 years ($625 per month since January 1983) has proven to be inadequate because plaintiff has been unable to work and because of the increased needs of the growing children. She also contended that the needs of the children now total $1,917.20 per month (or $23,006.40 per year).

Plaintiff asserted before the Referee that defendant has, since his remarriage and especially during the pendency of this application, followed a pattern of financial subterfuge to

conceal his assets, i.e., by "deliberately encumbering" them with debt to reduce his spendable income and by intermingling his net income with that of his second wife. Plaintiff acknowledged that, in addition to seeking an increase of almost $1,300 per month in child support, she wanted defendant to pay the children's entire summer camp expenses, approximately $4,000, and the college education expenses of the older child, who, at the time of the hearing, still had three years left before his graduation from high school.

In his initial report, the Referee found, *inter alia,* that defendant had not, as plaintiff contended, attempted to conceal his income and assets; that the reasonable annual needs of each child were $8,500, which included food, clothing, housing, utilities and recreation; that the issue of summer camp had been rendered academic by virtue of defendant's proven inability to pay for the full amount of the children's basic needs; and that the issue of college expenses was premature.

Special Term referred the matter back to the Special Referee finding, *inter alia,* that he erred in not taking testimony on the income producing potential of the plaintiff; that he should have taken evidence concerning the assets, income, life-style and resources of plaintiff's present husband; that his findings as to the reasonable annual needs of the children of the parties for use and occupancy of the Great Neck house (one third of the cost of that household), and for fuel, utilities and telephone (one third of the total expenses for the household) was erroneous; and, that he did not consider the extent to which the sums allocated to the children contribute to the increased equity of plaintiff and her husband in the Great Neck house over and above the cost of providing food and shelter.

In his supplemental report, dated January 24, 1985, the Special Referee reported, *inter alia,* that the record did not permit a reasonably informed estimate of plaintiff's "income earning potential" since, although a college graduate and former teacher, she had never obtained a New York State teaching certificate and that plaintiff's testimony that her present husband earns a substantial income of over $100,000 obviated the need for the husband to testify. The Special Referee also declined to change his recommendation as to the proportionate use of the Great Neck house by the two boys and failed to adequately address Special Term's concern as to how the sums allocated to the children increases the equity of

plaintiff and her husband in the Great Neck house over and above the cost of room and shelter.

Nevertheless, Special Term adopted the Special Referee's finding that the reasonable needs of the children totaled $17,000 per year ($8,500 per child). The court also concluded that defendant should be responsible for two thirds of the cost of supporting the parties' children. He was, therefore, adjudged responsible for $948 per month, or $11,376 annually. The court also found that plaintiff had made a sufficient demonstration of special circumstances to warrant defendant contributing two thirds of the cost of a college education for David and summer camp for Jonathan. Plaintiff's request for counsel fees was denied.

■ ■ We find that the order increasing defendant's basic child support obligations was in error. We also find that Special Term abused its discretion in directing defendant to pay two thirds of the college and summer camp expenses upon the record before it.

While *Matter of Boden v Boden* (42 NY2d 210) requires, in the case of parties to a separation agreement, an unanticipated and unreasonable change in circumstances or a finding that the agreement was unfair when entered into, in order to justify an increase in support, we have been instructed by the Court of Appeals that the principles enunciated in *Boden* are restricted to situations where the dispute is directed solely to readjusting the respective obligations of the parents to support their child. *(See, Matter of Brescia v Fitts,* 56 NY2d 132, 139.) Thus, where it is the child's right to receive adequate support that is asserted, it is sufficient that a change in circumstance has occurred warranting the increase in the best interests of the child. *(Matter of Brescia v Fitts, supra.)*

■ Plaintiff's request for an upward modification of child support is predicated on the children's right to receive adequate support. Although not entirely free from doubt, as can be seen from the Referee's finding that the proceeding represents an effort by plaintiff's second husband to recoup what he considers to be his own contribution to the support of David and Jonathan, we apply the less stringent standard of *Brescia (supra)* to determine whether an increase beyond the father's contractual agreement is warranted by the circumstances herein. We conclude that it is not.

The increased amount of child support recommended by the Special Referee, and adopted by Special Term, is primarily

predicated upon a disproportionate allocation to these children of one third of the cost of operating the 10-room Great Neck home where they now reside by virtue of their mother's remarriage. Living in this household besides Jonathan and David, however, are plaintiff and her husband, the husband's two sons who stay there on such a frequent basis that a room is set aside for them, the couple's daughter and the live-in housekeeper. As noted by Special Term, the Special Referee did not consider the extent to which the maintenance of this large home may be irrelevant to the needs of the children and the extent to which the support payments contribute to the increased equity of the mother and her husband in the Great Neck property over and above the cost of providing food and shelter. In any event, it is clear that the amount charged to the children for their occupancy is excessive and without reasonable substantiation in the record.

In addition, under the circumstances herein, the escalation provision of the separation agreement clearly allows the children to benefit from defendant's projected continuing improvement in financial condition. This can be contrasted with *Matter of Brescia v Fitts (supra)*, where the separation agreement provided for a declining sum of support as the years went by, and *Matter of Michaels v Michaels* (56 NY2d 924) where the separation agreement provided for a set amount of child support for the entire period of time and there was no provision for modification in the event of changed circumstances.

Upon the facts before the Special Referee and Special Term, plaintiff failed to make a sufficient showing to justify any upward modification of basic child support.

■ In addition, Special Term's direction that defendant be responsible for two thirds of the college expenses of the older child and two thirds of the summer camp expenses of the younger child was not supported by evidence in the record.

Absent unusual circumstances or voluntary agreement, the furnishing of a private college education to one's child is not within the purview of necessaries for which a father can be held to be obligated. *(Tannenbaum v Tannenbaum,* 50 AD2d 539.)* We have previously noted with approval "three relevant considerations in determining whether special circumstances exist:

" '(1) the educational background of the parents;

" '(2) the child's academic ability; and

" '(3) the father's financial ability to provide the necessary funds' *(Kaplan v Wallshein,* 57 AD2d 828, 829.)" *(Connolly v Connolly,* 83 AD2d 136, 140.)

The Special Referee concluded at the hearing that the issue of college expenses was premature since the elder child still had to attend three more years of high school at that time. Likewise, he concluded that defendant lacked the financial ability to pay for the increased child support *and* summer camp. Since we have vacated the upward modification of child support and the elder child is now of college age, we remand as to the issues of summer camp and and college expenses so that the factors approved in *Connolly (supra)* and the revised financial obligations of defendant can be adequately considered at a hearing.

Accordingly, the order of the Supreme Court, New York County (Hortense W. Gabel, J.), entered May 28, 1985, which, *inter alia,* confirmed the report and supplemental report of the Referee and granted plaintiff's motion to the extent of increasing child support, directing the payment of arrears by defendant and directing defendant to contribute two thirds of the college education expenses of the older child and two thirds of the summer camp expenses of the younger child, should be modified, on the law and facts and in the exercise of discretion, plaintiff's motion for an upward modification of child support denied, the award of arrears arising from such upward modification vacated, the direction for defendant to contribute two thirds of the college and summer camp expenses vacated, and this issue remanded to the Supreme Court for an evidentiary hearing in accordance with this memorandum, and otherwise affirmed, without costs or disbursements.

Ross, J. P., CARRO, KASSAL and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on May 28, 1985, unanimously modified, on the law and facts and in the exercise of discretion, plaintiff's motion for an upward modification of child support denied, the award of arrears arising from such upward modification vacated, the direction for defendant to contribute two thirds of the college and summer camp expenses vacated, and this issue remanded to the Supreme Court for an evidentiary hearing in accordance with the memorandum decision herein, and otherwise affirmed, without costs and without disbursements.