■ In the Matter of MARYANN CASSANO, Respondent, v DOMINICK CASSANO, Appellant. [612 NYS2d 160] —In a support proceeding pursuant to Family Court Act article 4, inter alia, for an upward modification of child support, the father appeals from an order of the Family Court, Queens County (Friedman, J.), dated February 15, 1991, which denied his objection to that portion of an order of the same court (Marchetti, H.E.), entered October 10, 1990, which, after a hearing, inter alia, directed him to pay 64.4% of his son's private school tuition, directed him to pay all unreimbursed health expenses for the child, and upwardly modified child support to $218 per week.

Ordered that the order is modified, on the facts, by granting the father's objection to that portion of the order entered October 10, 1990, which directed him to pay 64.4% of his son's private school tuition and deleting that provision of the Hearing Examiner's order; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

We agree with the father's contention that the Family Court is required to provide reasons for its decision to award child support pursuant to the Child Support Standards Act (hereinafter CSSA) concerning the parents' combined income in excess of $80,000 (see, Matter of Holmes v Holmes, 184 AD2d 185; Chasin v Chasin, 182 AD2d 862; Harmon v Harmon, 173 AD2d 98). However, we find that the Hearing Examiner properly exercised his discretion in ordering both parties to pay their prorated shares of 17% of their combined parental income in excess of $80,000 (see, Family Ct Act § 413 [1] [c] [3]), and that the court properly relied upon the Hearing Examiner's recommendations and statement of reasons.

However, under the circumstances of this case, we find that

the court erred in directing the father to pay 64.4% of his son's private schooling. The relevant provision of the CSSA with respect to educational expenses is: "Where the court determines, having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires, that the present or future provision of post-secondary, private, special, or enriched education for the child is appropriate, the court may award educational expenses" (Domestic Relations Law § 240 [1-b] [c] [7]).

Traditionally, we have held that absent a voluntary agreement, a parent is not obligated to pay for the cost of a child's private schooling unless special circumstances exist *(see, Matter of Howard v Howard,* 186 AD2d 132; *Cooper v Farrell,* 170 AD2d 571; *Romansoff v Romansoff,* 167 AD2d 527). The relevant factors in making such a determination were said to be: (1) the educational background of the parents, (2) the child's academic ability, and (3) the parents' financial ability to provide the necessary funds *(see, Matter of Howard v Howard, supra; Romansoff v Romansoff, supra).*

While it is true that under *Manno v Manno* (196 AD2d 488, 491), it was held that "the court may properly direct a parent to contribute to a child's private college education, even in the absence of special circumstances", neither the statute nor the *Manno* decision confers unfettered discretion to a court. Significantly, the Court in *Manno v Manno (supra,* at 491), went on to say: "In determining whether to award educational expenses, the court must consider the circumstances of the case, the circumstances of the respective parties, the best interests of the children, and the requirements of justice".

Thus, the factors which made up the special circumstances test have, in effect, been subsumed by the factors set forth in *Manno.* The factors which a court must consider have changed, and now the court is required to consider the factors set forth in *Manno* in making a determination. In short, there must be a reason for requiring the payment of educational expenses consistent with the statute and the *Manno* decision. Although the special circumstances test has been replaced, there must nevertheless be a balancing of several factors, including but not limited to those which were essential to the traditional "special circumstances" test *(see, e.g., Hirsch v Hirsch,* 142 AD2d 138).

One of the factors which must be considered in a case of this nature is whether, and to what extent, there exists a real

difference in quality between the education furnished by the public schools, on the one hand, and that which is available at the private school which the child in question attends or plans to attend, on the other *(see, e.g., Matter of Rucks v Nugent,* 191 AD2d 786; *Matter of Ladner v Iarussi,* 92 AD2d 895; *Gartin v Gartin,* 64 AD2d 600; *cf., Valente v Valente,* 114 AD2d 951; *Kaplan v Wallshein,* 57 AD2d 828).

The record in this case does not indicate the existence of any circumstances which would justify the court's ruling. There is nothing to indicate that the circumstances of the respective parties would justify this result, nor is there anything which would lead us to believe that the best interests of the child require that the father provide educational funds for private high school education *(see, Matter of Rucks v Nugent, supra).* Moreover, there is nothing in the record which would indicate that the education provided by the private school in question is of a better quality than that provided by the public schools, and it would be improper to conclude that public schools are automatically presumed to be inferior to private schools. Furthermore, there is no basis for the court's determination that merely because the parties' only other child has attended private school for a portion of her education, that it would automatically be beneficial to the other child to be provided a like education. Each child is different, and it would be improper to assume that whatever is good for one child is automatically good for the other children in the family.

Moreover, it should be noted that both the language of the CSSA and the above-quoted language in *Manno v Manno (supra),* were merely a carryover of the language of Domestic Relations Law § 240 (1), prior to the enactment of the CSSA in 1989. Domestic Relations Law former § 240 (1) which authorized a court to make a "direction, between the parties, for the custody, care, *education* and maintenance of any child of the parties, as, in the court's discretion, justice requires, having regard [for] the circumstances of the case and of the respective parties and to the best interests of the child". It is clear, then, that neither the CSSA nor *Manno v Manno (supra)* was meant to represent a radical shift away from the traditional rule of "special circumstances".

The record before us is deficient and is devoid of proof which would satisfy the inquiry which must be made under the relevant provisions of CSSA and this Court's decision in *Manno v Manno (supra).* We, therefore, conclude that, under these circumstances, the Family Court improvidently exer-

cised its discretion in modifying the husband's child support obligations relative to the cost of private education.

The husband also argues that it was error for the Family Court to require him to pay his share of future unreimbursed medical expenses. This argument is meritless in light of the terms of Family Court Act § 413 (1) (c) (5) *(see also,* Domestic Relations Law § 240 [1-b] [c] [5]; *Wilson v Wilson,* 203 AD2d 558 [decided herewith]). The various cases which might be cited for the proposition that "open ended" awards are improper *(e.g., Nolfo v Nolfo,* 188 AD2d 451) reflect the state of the law as it existed prior to the enactment of Family Court Act § 413 (1) (c) (5) and Domestic Relations Law § 240 (1-b) (c) (5) and, to the extent that they conflict with our holding in this case and in *Wilson v Wilson (supra),* are no longer valid.

The father contends that there was a mathematical error in the Hearing Examiner's determination of his pro rata share of the combined parental income. However, the Family Court granted the father's objection to that portion of the Hearing Examiner's order which imputed rental income to him and upon which the Hearing Examiner based her pro rata calculations, and "remanded [the matter] to the hearing examiner for recalculation of the order of support and retroactive support based upon the court's determination that respondent's average weekly adjusted gross income is $1,209.00, exclusive of rental income". Thus, the father's contention in this regard is academic *(see, Chertok v Chertok,* 150 AD2d 327).

We have examined the father's remaining contentions and find them to be without merit. Thompson, J. P., Bracken and Balletta, JJ., concur.

Rosenblatt, J., concurs in the result only.

Miller, J., concurs in part and dissents in part and votes to affirm the order insofar as appealed from, with the following memorandum: I concur with my colleagues, except insofar as they find that the Family Court improvidently exercised its discretion in requiring the father to pay $2,269.78 per year for his son's private parochial school education. In my view, that direction is amply supported by the record, is consistent with the circumstances of this case, those of the parties, is in the child's best interest, and is in the interest of justice *(see,* Domestic Relations Law § 240 [1-b] [c] [7]; *Manno v Manno,* 196 AD2d 488).

Educational expenses are now a component of a parent's basic child support obligation *(see,* Family Ct Act § 413 [1] [c] [7]) and, in determining that basic support, the court must

consider the standard of living the child might have enjoyed had the marriage not failed (see, Family Ct Act § 413 [1] [f] [3]).

The parties in this case sent their older daughter to a Roman Catholic school from the fifth through eighth grades, and then to Catholic High School through the eleventh grade, when she left for personal reasons. Clearly, this indicates a preference by the parents to provide a parochial school education for their children. It is reasonable to assume that but for the divorce, the parties would have also sent their son to a parochial school.

Furthermore, this preference for private religious school education reflects not only the parents' regard for the more individualized attention commonly offered by private schools, but also this family's emphasis on religious values as an important component of their family life and value structure. This Court has indicated its respect for such preferences and found them persuasive in other cases where a parents' obligation to pay for private parochial school education has been an issue. As this Court held in Keehn v Keehn (137 AD2d 493, 497-498), "In light of the family's emphasis on religious training and the fact that the defendant has provided private religious education for his children in the past, we find it was proper to direct the defendant to continue to pay for such education until each child graduates from high school" (accord, Valente v Valente, 114 AD2d 951).
I find no distinction in the circumstances herein warranting a different conclusion.

Furthermore, at the time of the hearing, the son was already enrolled as a freshman in the parochial school. It is therefore reasonable to assume that he has remained at that school and that it would be in his best interest not to have his school and social life interrupted at this juncture (see, Valente v Valente, supra).

Clearly, the parties, with a combined parental income of $99,944, possess the financial wherewithal to pay for their son's private education. The cost of tuition at the son's private school, where he was enrolled as a freshman at the time of the hearing, was $3,175 per year plus uniforms and books (combined cost of $369) for a total of $3,524.50 per year. Of this total, the father would pay $2,269.78 (or 64.4%) while the mother would pay $1,254.72.

I agree with my colleagues that the Family Court's discretion in regard to requiring parental payment of educational

expenses, though broadened, is not entirely "unfettered", and that it would have been preferable for the Hearing Examiner to articulate all of the factors supporting her determination. However, in this case, it is clear to me that the Family Court's adoption of the Hearing Examiner's recommendations, made after a two-day hearing, was not an improvident exercise of discretion, since the facts and circumstances in the record clearly support that determination.