OPINION OF THE COURT
Matthew F. Cooper, J.
The college application process can be an extremely stressful experience in a young person’s life. Not only is there the prospect of living away from home, often for the very first time, and concerns about making new friends and adjusting to a new environment, but there are difficult decisions to be made as to where to apply and then, if accepted, the crucial choice as to which college or university to actually attend. Unfortunately, for the child of a high-conflict divorce, the anxiety surrounding the process is made that much more intense by the child’s awareness that his or her choice of a college will provide yet another opportunity for parental strife. In many cases the strife will center on how much the parent who is obligated to pay child support will have to contribute towards the cost of the child’s college education. And in New York, the battle is often over what is known as the “SUNY cap.”
*1003 This divorce is by every definition high-conflict, and it is one where money has always been a major issue. The parties, both of whom are attorneys, have regularly returned to court since the entry of the judgment of divorce in 2008 to litigate an endless succession of postjudgment motions. This motion, their sixteenth, results from what one would normally assume to be a cause for celebration: the acceptance of their elder child, who has struggled with a learning disability, to Syracuse University and his decision to attend that institution of higher learning. Instead, the parties are before the court because the defendant father insists that he should be able to invoke the SUNY cap and not be made to pay any more than he would have had to pay if the child had opted to attend a state-funded public school in the State University of New York (SUNY) system, like the State University of New York at Binghamton (SUNY Binghamton), as opposed to a non-state-funded private school, like Syracuse.
This motion calls for the court to examine the SUNY cap and determine whether it is indeed an actual established tenet of matrimonial law, and if so, when and how it should be applied. Although the SUNY cap is often referred to directly in agreements that set forth the parties’ responsibilities when it comes to college and is regularly raised during litigation over the payment of college tuition and expenses, there are surprisingly few reported decisions dealing with it. Almost all of the decisions in which the SUNY cap is mentioned come from the Appellate Division, Second Department. The Appellate Division, First Department, has not addressed the issue at all and, in fact, there appears to be no First Department case, either at the appellate or trial level, where the term “SUNY cap” is used even in passing. As will become clear, the thrust of this decision is that the SUNY cap — to the extent that it stands for the proposition that before a parent can be compelled to contribute towards the cost of a private college there must be a showing that a child cannot receive an adequate education at a state college — is a doctrine that in many cases is harmful to the children of divorced parents, acts to discriminate against them, and is largely unworkable.
Background
The parties were divorced on December 23, 2008. They have two sons, one who is 18 and one who is 16. The judgment of divorce incorporated a custody agreement and a stipulation of *1004 settlement by which the parties had resolved all issues of the divorce except for those concerning child support. The judgment, which was amended on February 26, 2009, also incorporated a decision rendered on August 27, 2007 by another justice of this court ordering defendant father to pay plaintiff mother, who is the custodial parent, the sum of $686 a month as basic child support for the two children as well as 22% of the children’s camp, unreimbursed medical, dental and therapy expenses.[1] No mention was made in either the decision, the custody agreement or the stipulation of settlement as to the payment of the children’s college tuition and expenses. As a result, both the judgment and the amended judgment of divorce are silent on the matter.
At the end of 2009, when the older child was still in high school and had not yet applied or been accepted to college, plaintiff made a motion seeking the same relief she seeks here with regard to the payment of college expenses. This court, in a decision and order dated August 30, 2010, denied that application, without prejudice, as having been made prematurely.
In 2007, the elder child was diagnosed with “moderate emotional difficulty” and learning/anxiety disorders, which necessitated certain educational accommodations (e.g., extra time for exams). Despite this diagnosis, he graduated in 2011 from Beacon High School, a selective public high school in Manhattan. He was accepted at Syracuse University, SUNY Binghamton and SUNY Buffalo, along with a number of other schools.[2] Syracuse, which awarded him $3,000 in financial aid, costs approximately $53,000 a year to attend as an undergraduate, while SUNY Binghamton and SUNY Buffalo cost only about $18,000 a year. Although the child visited Binghamton and gave serious consideration to going there, he ultimately decided to attend Syracuse. He is now a freshman there studying computer engineering and computer graphics.
The younger child is currently a junior at Stuyvesant High School. Stuyvesant is one of the most selective public high *1005 schools in New York City. At this point in the younger child’s junior year, he has yet to begin applying to colleges. Inasmuch as most Stuyvesant graduates attend college, it can be reasonably assumed that this child will be college bound at some point.
The parties are both practicing attorneys in New York City. Plaintiff works for the Metropolitan Transit Authority Inspector General’s Office and defendant is self-employed as a solo practitioner. Plaintiffs 2010 federal income tax return reports an adjusted gross income of $109,896. Defendant’s 2010 federal income tax return reports an adjusted gross income of $105,135. Both parties have savings and retirement accounts, largely as a result of inheritances. Plaintiff’s net worth statement shows she has assets of approximately $1,230,000. Defendant’s net worth statement shows he has approximately $580,000. Both plaintiff and defendant went to private undergraduate colleges and law schools, with plaintiff graduating from Northwestern University and New York University School of Law, and defendant graduating from Columbia University and Benjamin N. Cardozo School of Law.
The Parties’ Contentions
Plaintiff asserts that defendant should be ordered to contribute equally to the cost of sending the older child to Syracuse and the cost of sending the younger child to college when the time comes for him to apply. Specifically, plaintiff requests that defendant be directed to pay one half of the following expenses for both children: all college related tuition, fees, housing, and meal costs, and all college preparation costs including tutors, entrance exam study courses, and application fees.
In opposing plaintiffs motion, defendant does not oppose an order directing him to contribute to his older child’s college education, but he asks the court to apply the SUNY cap and limit his responsibility to a percentage of the costs of a state university education rather than to a percentage of a private college education. Defendant’s position in this regard is based on his claim that he is unable to meet the financial demands of paying for private college and on his belief that his son can receive as good an education at SUNY Binghamton as he can at Syracuse. With respect to the younger child’s college education, defendant asserts that any determination at this time would be premature and unduly speculative in that the child has yet to reach the college application process. Finally, defendant argues that the law of the case requires that plaintiffs application for *1006 contribution toward college preparation and application fees for both boys be denied as this court has previously denied her application for this relief.
Analysis
I. College Expenses for the Elder Child
Prior to September 1989, a court, “[a]bsent unusual circumstances or a voluntary agreement,” was without the authority to order a parent to pay college expenses. (Samuels v Venegas, 126 AD2d 145, 151 [1st Dept 1987]; Tannenbaum v Tannenbaum, 50 AD2d 539 [1st Dept 1975].) As society changed and a college education became more a necessity than a luxury, the law changed as well. The enactment of Domestic Relations Law § 240 (1-b) (c) (7) reflected the legislature’s realization of the important role that college played in the lives of our young people and it conferred upon the courts of this state the authority to “direct a parent to contribute to a child’s private college education, even in the absence of special circumstances or a voluntary agreement.” (Manno v Manno, 196 AD2d 488, 491 [2d Dept 1993]; see also e.g. Otero v Otero, 222 AD2d 328 [1st Dept 1995]; Matter of Ocasio v Smith, 70 AD3d 952, 953 [2d Dept 2010].) The statute provides that when a court exercises its discretion to direct such a contribution from a parent, it is to do so “having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires.” (Domestic Relations Law § 240 [1-b] [c] [7].) Case law from both the First and Second Departments has augmented the provisions of Domestic Relations Law § 240 (1-b) (c) (7) by setting forth specific factors that are to be considered in determining whether to award college expenses. These factors include the educational background of the parents and their financial ability to provide the necessary funds, the child’s academic ability and endeavors, and the type of college that would be most suitable for the child. (See Rosado v Hughes, 23 AD3d 318 [1st Dept 2005]; Matter of Naylor v Galster, 48 AD3d 951 [3d Dept 2008]; Reiss v Reiss, 56 AD3d 1293 [4th Dept 2008].)
To be clear, defendant is not claiming that he should not have to pay anything towards the costs of his son attending Syracuse. His position is that his obligation should be based on what it would cost for his son to attend SUNY Binghamton, which is about a third of what it costs to go to Syracuse. Given defendant’s concession that some contribution is indeed proper here, *1007 there is no need for the court to determine whether defendant is obligated in the first place to contribute towards his child’s college education. Instead, the court can proceed directly to the issue in genuine dispute: whether defendant’s obligation to pay for the child’s college expenses under Domestic Relations Law § 240 (1-b) (c) (7) should be limited, by way of a SUNY cap, to a percentage of the cost of a SUNY education.
One thing that Domestic Relations Law § 240 (1-b) (c) (7) does not provide for is a SUNY cap. The SUNY cap is a concept that has been judicially created by way of a string of decisions rendered since the enactment of the statute. These decisions, all of which defendant cites in his papers as supporting his position that his obligation to pay for college should be significantly limited, include Matter of Maurer v Maurer (57 AD3d 548 [2d Dept 2008]); Powers v Wilson (56 AD3d 642 [2d Dept 2008]); Reiss v Reiss (56 AD3d at 1294); Matter of Holliday v Holliday (35 AD3d 468 [2d Dept 2006]); and Sheridan v Sperber (269 AD2d 439 [2d Dept 2000]). The problem with these cases is that they provide little in the way of instruction as to when a SUNY cap might be properly applied over the objection of the parent who is seeking an award for college expenses. In Maurer v Maurer, Reiss v Reiss, and Sheridan v Sperber, the parent seeking the award apparently had no objection, at least at the appellate level, to the contribution being limited to the cost of a SUNY school. In each of the cases, the appeal was taken by the parent who had been ordered to pay college expenses and was objecting to having to contribute anything at all towards the costs of his or her child’s college education. Thus, the analysis in Maurer, Reiss and Sheridan centers not on the limitation of the obligation under the SUNY cap, but on a parent’s obligation to pay for college in general. This is in direct contrast to the situation here, where plaintiff most certainly objects to defendant’s obligation being capped at the SUNY rate and where defendant is not contesting his obligation to pay for college, but is simply contesting his obligation to pay any amount above the SUNY rate.
The two other cases cited above, Holliday v Holliday and Powers v Wilson, though more applicable to the issue presented here in that they involve the imposition of the SUNY cap over the objection of the parent receiving support and at the behest of the parent paying support, are, in the end, no more instructive than Maurer v Maurer, Reiss v Reiss, or Sheridan v Sperber. In Holliday v Holliday, the Appellate Division, Second *1008 Department, in reversing the lower court’s failure to impose the SUNY cap, stated:
“In the instant case, the Family Court improvidently exercised its discretion in requiring the father to pay approximately 50% of the cost of his daughter’s education at a private university . . . Under the circumstances presented here, the father’s contribution should have been limited to 50% of what it would annually cost to send his daughter to a college in the State University of New York (hereinafter SUNY) system.” (35 AD3d at 469 [emphasis added].)
In Powers v Wilson, the same court, citing Holliday v Holliday, affirmed the lower court’s imposition of the SUNY cap by stating:
“Under the circumstances of this case, the Supreme Court providently exercised its discretion in requiring the plaintiff to pay only 60% of the highest college tuition charged by the SUNY system . . . Similarly, the court providently exercised its discretion in requiring the plaintiff to pay for only 60% of the parties’ children’s overall college expenses.” (56 AD3d at 643 [emphasis added].)
Unfortunately, in neither Holliday nor Powers did the appellate court give any hint as to what those circumstances were that led it to find that one lower court acted improvidently in not imposing the SUNY cap and another lower court acted providently in imposing it. Thus, the cases provide little guidance for this court as it attempts to providently exercise its discretion in this instance.
There are, however, a number of Appellate Division, Second Department, cases, all of which again are cited by defendant, that do provide some guidance as to when and when not to base a parent’s obligation for college expenses on the SUNY rate. In Berliner v Berliner (33 AD3d 745, 748 [2d Dept 2006]), the court stated as follows: *1009 The holding in Berliner is not directly applicable here in that the child did not go to a private boarding school; he went to a select public high school. It is instructive, however, in two regards. One is that the court’s statement that there “is no basis in this record” for imposing the SUNY cap implies that the burden falls on the proponent of the cap to demonstrate that it is warranted. The inference to be drawn is that there is no presumption that a parent’s obligation to pay for college is to be limited to the cost of a SUNY education unless proven otherwise; if anything, the presumption goes the other direction. The second way it is instructive is that the decision’s reference to the “so-called ‘SUNY cap’ ” (emphasis added) can be seen as an indication that even the Second Department views the SUNY cap as something less than an established doctrine firmly ensconced in the fabric of family law. At most, it is a concept that comes into play under certain limited circumstances.
*1008 “The Supreme Court improperly imposed a so-called ‘SUNY “cap” ’ on the former husband’s contribution to the children’s college expenses, limiting his contribution to what it would be if the children attend public New York State colleges. There is no basis in this record for so doing, especially in view of the fact that the children attend private boarding secondary school.”
*1009 One of the circumstances under which the SUNY cap is to be applied is where the parties have entered a binding stipulation or separation agreement specifically providing for such a limitation on the amount a parent is to contribute towards a child’s college education, irrespective of whether the child attends a public or a private college. Another situation, and the one that appears to have been addressed most often in the Second Department’s cases, is where an agreement specifically requires both parties to consent to decisions concerning college and one party withholds consent on the basis of the cost of a particular college. In such instances, the court has found it appropriate to impose a SUNY cap limiting the amount that the parent who has withheld consent can be ordered to pay. (See e.g. Balk v Rosoff, 280 AD2d 568 [2d Dept 2001]; Halligan v Wesdorp, 264 AD2d 466 [2d Dept 1999]; Matter of Collins v Collins, 222 AD2d 584 [2d Dept 1995].)
If there was a provision in the separation agreement or in the judgment requiring plaintiff to obtain defendant’s consent as to the choice of the child’s college, then Balk v Rosoff, Halligan v Wesdorp and Collins v Collins would be far more relevant to this case. Because there is no such provision, the cases are of limited applicability. Nevertheless, defendant relies heavily on them, citing the cases for the proposition that the SUNY cap should be applied where the proponent of private education fails to establish that the private college in question provides a superior education to that of a state college. In so doing, however, defendant is expanding the reach of these decisions far *1010 beyond their particular facts. What defendant has done is seized upon language in the cases that might appear to support his position that if Syracuse University and SUNY Binghamton are of similar academic caliber then his contribution should be pegged to what it costs to attend Binghamton.
The language that defendant points to in Balk v Rosoff reads: “With regard to tuition, room, and board, Boston University costs over three times more than SUNY at Binghamton, while the academic rankings of the two schools are similar.” (280 AD2d at 569.) The language he points to in Collins v Collins reads: “The petitioner cited no compelling reason why her daughter’s best interests were served by her attendance at the private college she attended instead of SUNY. She merely noted that State universities were large and intimidating.” (222 AD2d at 584.) What defendant fails to note, however, is that these two cases, as well as Halligan v Wesdorp (264 AD2d at 467 [father’s obligation to pay for child’s attendance at Marist College held not to exceed the “the tuition and related expenses he would have incurred had (the child) attended SUNY at New Paltz”]) were not decided using a Domestic Relations Law § 240 (1-b) (c) (7) analysis of “the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires.” They were all decided within the specific context of there being separation agreements in each case that provided the father with the right to reasonably withhold his consent, on the basis of finances, to the child attending a private college. It bears repeating that there is no such agreement in the instant case. Thus, the analysis applied in Balk v Rosoff, Halligan v Wesdorp and Collins v Collins, which is whether the father in each case unreasonably withheld the consent required under the separation agreement for the child to attend private college, is inapplicable to the situation presented here.
What defendant wants, despite the fact that consent does not come into play here, is for plaintiff to be required to prove that Syracuse is a better school than SUNY Binghamton in order for him to be required to pay Syracuse’s higher expenses. If this were to happen, the court would be placed in the position of being a kind of judicial college evaluator. For a number of reasons, this is something that this court cannot and will not do. While courts have occasionally been called upon to evaluate the difference between a public and private school education, this has almost always been within the context of private elementary and high school. {See Matter of Cassano v Cassano, 203 AD2d *1011 563, 565 [2d. Dept 1994] [“Moreover, there is nothing in the record which would indicate that the education provided by the private school in question is of better quality than that provided by the public schools”].)[3] To extend this evaluative process to the arena of individual state and private colleges, which is in effect what defendant is advocating, would require a court to take on a role as a “college rating entity,” a role normally associated with the college guides published each year, such as U.S. News & World Report: Best Colleges; Barron’s, Profiles of American Colleges; Forbes, America’s Best Colleges; and The Princeton Review, The Complete Book of Colleges.
Even if the court were willing to enter the college ratings arena, there are no judicially manageable standards to use in a postjudgment divorce proceeding for determining the quality of education a student will receive at Syracuse University as compared to SUNY Binghamton, or for that matter as compared to any of the approximately 4,000 other colleges and universities in the United States. One can only imagine weeks of testimony with regard to each school on such things as the SAT scores of the incoming freshman class, the credentials of each faculty member, the success rate of the school’s alumni, the quality of campus facilities, the size of the classes and the amount of individual attention a student can expect to receive, and the overall level of satisfaction or dissatisfaction that the student body experiences. And then in order to have persuasive witnesses with the requisite personal knowledge, there is the prospect of the parties calling the admissions director, dean, provost, department chairs, librarian, alumni director, and even students from the particular college that each side is championing as the finer bastion of academic excellence. Under these circumstances, it is difficult to conceive of a workable procedure— let alone a methodology — for a court to make a finding that one college is “better” than another.
It might be fair then to ask why a court just can’t “go to the books,” as it were, and make its determination based simply on the rankings assigned to a school by the various college guides. *1012 After all, colleges live and die by these rankings, and families of college applicants often come to regard the college guides as veritable bibles. The problem with the guides, however, as the writer Malcolm Gladwell recently observed in his article, The Order of Things, in the February 14, 2011 issue of The New Yorker, is that ranking colleges is “an act of real audacity” given the complexity of the matter. As Gladwell explains, popular college ranking entities typically employ methodologies based on evaluators’ prejudices that use ineffective proxies for quality, producing rankings systems that essentially measure institutional wealth. Consequently, the guides are of limited evidentiary value, not only because they constitute inadmissible hearsay, but because of the highly subjective nature of their conclusions.
In any event, whether the college rankings are valid or reliable is not really the issue. Nor is the real issue what college or university is considered the best in some general way, or the most highly rated, or the most highly ranked. The real issue is what college or university is the best for the individual child in question in the ways that matter most to that particular child. (See Rosado v Hughes, 23 AD3d at 318 [under Domestic Relations Law § 240 (1-b) (c) (7), a court must look to the “sort of college” that would be most “suitable”].) Unquestionably, the selection of a college for a child goes far beyond the statistical and the quantifiable, and is instead a very personal, very subjective decision. It is a decision that should be made not by a court but by the child, ideally with the help and support of both parents.
Here, the child chose to attend Syracuse University instead of SUNY Binghamton because he evidently felt that it would be the better school for him. One of the major reasons given as to why he felt this way and made the decision he did is that Syracuse is the only college to have accepted him that provides strong programs in both of his desired fields of study, computer engineering and computer graphics. An equally important reason is that Syracuse has what are known as Learning Communities, several which focus on science. These Learning Communities, as was explained by plaintiff at oral argument, group students of similar academic interests into specific residences. This type of arrangement would seem to offer the child, who suffers from learning disabilities and social anxiety, an environment designed to help him achieve success both academically and socially.
*1013 There could be countless other reasons a child, and this child in particular, would choose to go to a private college over a SUNY college. One is that private colleges tend to have a geographically diverse student body coming from all the states in the union as opposed to largely coming from New York. Another is that many private colleges will be more likely to have active and organized alumni networks throughout the country, and even the world, that can provide graduates with important business and social connections. Other considerations might include such things as the size of the school, the type of campus, the architectural distinction of the buildings, the nature of its athletic programs, the services provided to students with either physical or learning disabilities, and the type of city or town in which the school is located.
This is by no means to imply that the educational experience that one can obtain at a New York State public college is somehow inferior to that offered by a private college. It is not. The SUNY system — from Stonybrook to Fredonia, Plattsburgh to Geneseo, Purchase to Brockport — is widely regarded as one of the best large-scale systems of higher education that has ever been created, be it public or private. But there is one thing the SUNY system should not be. Contrary to what proponents of a wide and liberal application of the SUNY cap might urge, the SUNY system should not be the assumed destination of the children of divorce.
In this case, it has been shown that there is ample reason to support the child’s choice of Syracuse, irrespective of whether it is ranked lower, higher or the same as SUNY Binghamton or any other SUNY school. Provided that the funds are available to finance the child’s education, the fact that Syracuse is a private school and costs more than a public school is not a reason to interfere with the child going to the school he chose and he wants to attend. This is particularly so in light of the fact that both his parents went to private colleges. One of the factors to be considered when making a determination under Domestic Relations Law § 240 (1-b) (c) (7) is the parents’ educational background. Inasmuch as plaintiff attended Northwestern and defendant attended Columbia, it can reasonably be assumed that there would exist an expectation in the family, and in the child himself, that he too could attend a private college.[4] (See Evans v Evans, 55 AD3d 1079, 1083 [3d Dept 2008]; see also *1014 R.E. v S.E., 27 Misc 3d 1216[A], 2010 NY Slip Op 50766[U] [Sup Ct, NY County 2010].) That expectation, and his wish to attend the college of his own choosing, should not be thwarted simply because his parents divorced.
Having found that the child’s academic ability and endeavors, the type of college that would be most suitable for him, and the educational background of the parents are all factors that call for plaintiff to contribute to his son’s education at Syracuse University, the court must now consider one remaining crucial factor. That factor is defendant’s ability to pay. It is defendant’s position that even though plaintiff may have the means to pay the high cost of their son attending Syracuse, he lacks the means to do so. Consequently, he contends that he should have to pay no more than $9,000 a year towards his son’s education, an amount that is roughly 50% of the present annual cost of a SUNY school.
The court rejects defendant’s contention as to his inability to pay a significant share of the child’s actual educational expenses now being incurred at Syracuse. It is true that plaintiff has considerable more savings than defendant and that she has a pension plan through her employment. But it is equally true that defendant’s net income last year was over $100,000, which is only about $5,000 less than plaintiff’s net income for the same period, and that he benefits from the substantial tax deductions and write-offs that come from being self-employed. Also, as was admitted at oral argument, defendant, although remarried for a number of years, has chosen to keep a second apartment in addition to the residence he shares with his new wife. Finally, and quite significantly, defendant has paid and continues to pay a very small amount in basic child support and child support add-ons. If defendant’s child support obligation were to be recalculated using his 2010 income, it would be far higher than the $686 monthly that he pays.
There is no basis to impose the SUNY cap, to the extent that it should be imposed at all, where the party seeking to invoke the cap has the financial ability to contribute towards the actual amount of his or her child’s college expenses. (See R.E. v S.E., 27 Misc 3d 1216[A], 2010 NY Slip Op 50766[U] [2010]; Bonnie B. v Michael B., 6 Misc 3d 1004[A], 2004 NY Slip Op 51718[U] [Sup Ct, Suffolk County 2004].) Here, defendant has the income *1015 and the assets — as well as the ability to keep producing substantial income through his law practice — to make a significant contribution to his son’s college education. Although defendant’s contribution should be less than plaintiffs, based on the difference between their net assets, and in particular what each of them presently has available for eventual retirement, that contribution should not be subject to some artificial construct like the SUNY cap. Rather, it should be based, as with all other child support obligations, on the respective finances of the parties. On this basis, the court concludes that defendant shall be obligated to contribute 40% of the total cost of the elder child attending Syracuse University, with those costs to include tuition, room and board, fees and books. The contribution shall begin with the 2011-2012 school year.[5]
II. College Expenses for the Younger Child
As discussed above, the court has the discretion to direct parents to pay the costs of their children’s college expenses when the separation agreement or other stipulation between the parents is silent in this respect. (See Domestic Relations Law § 240 [1-b] [c] [7].) However, such a directive is premature when college is several years away, the choice of college and the cost of tuition are uncertain, and the child’s academic interests and abilities are not supported by evidence. (See Gilkes v Gilkes, 150 AD2d 200, 201 [1st Dept 1989]; see also LaBombardi v LaBombardi, 220 AD2d 642, 644 [2d Dept 1995].) Here, college is still more than a year and a half away for the younger child. It is therefore premature and unduly speculative to attempt to assess what the child’s plans are with regard to college and what the costs will be. As a result, plaintiffs application for this relief is denied without prejudice to renew at a subsequent date when the child has committed to attend college and the costs of attendance are supported by evidence.
III. College Preparation and Application Expenses
Where a party seeks to modify the child support provisions of an order or judgment, the movant bears the burden of demonstrating an unanticipated and “substantial change in circumstances.” (Domestic Relations Law § 236 [B] [9] [b] [2] [i]; *1016 see also Matter of DiGiorgi v Buda, 26 AD3d 434 [2d Dept 2006].) In determining whether there has been a sufficient change in circumstances, the court may consider “the increased needs of the children, the increased cost of living insofar as it results in greater expenses for the children, a loss of income or assets by a parent or substantial improvement in the financial condition of a parent, and the current and prior lifestyles of the children.” (Shedd v Shedd, 277 AD2d 917, 918 [4th Dept 2000]; see also Matter of Brescia v Fitts, 56 NY2d 132, 140-141 [1982].)
Plaintiffs application seeking contribution to expenses for the children’s college preparation courses, tutors, and application fees is the same as her prior application in motion sequence number 13, which was resolved by this court’s decision and order of August 30, 2010. Now, as then, plaintiff has sufficiently identified those expenses the children currently incur, but has not presented a sufficient change in circumstances to warrant a directive for contribution. At the time child support was determined, the special referee only recommended that the parties share the costs of camp, unreimbursed medical, dental and therapy for the children. This aspect of the referee’s report was confirmed by an order of April 19, 2007, and it was not amended by the child support order. To the extent that the current expenses for the children are not new expenses, as both tutoring and testing were raised before the referee, and do not constitute significant costs, there is no substantial change in circumstances sufficient to warrant a modification of defendant’s current add-on obligation. (See Brescia, 56 NY2d at 141.)
Conclusion
In accordance with what has been set forth above, plaintiffs application with respect to college expenses for the elder child is granted to the extent that defendant is directed to contribute 40% of said child’s college education expenses. Plaintiff is to furnish defendant with a detailed accounting of the expenses for the child’s fall semester at Syracuse University within 20 days of this decision, and defendant is to reimburse plaintiff with his 40% share within 20 days of the receipt of the accounting. Plaintiffs application with respect to the younger child’s college education expenses is denied, without prejudice, with leave to renew. Plaintiffs application with respect to both children’s college preparation and application expenses is denied.

. The child support award rendered in 2007 was based on defendant’s 2005 gross taxable income of $55,222 from his law practice and plaintiffs 2005 gross taxable income of $61,604 in job earnings, $85,858 in capital gains, and $21,187 in tax-exempt interest. Although defendant’s income has nearly doubled since that time, he has continued to pay child support at the rate of $686 monthly.

. The other schools to which the child was accepted include George Washington University, Rochester Institute of Technology, the University of Maryland, and the University of Delaware.

. As stated in Scheinkman, New York Law of Domestic Relations § 16:41 (11 West’s NY Prac Series 2011):
“In general, courts apply a more rigorous approach to applications for private school expenses than applications for college expenses.
“This distinction is based primarily on the fact that children have a constitutional right to a free education at public schools, while there is no similar right to a college education.”

. At oral argument, defendant stressed that college costs far more now than when his parents paid his tuition at Columbia. While this is certainly *1014 true, chances are that plaintiff earns considerably more now than his parents did then.

. The court recognizes that defendant’s contribution towards his son’s college expenses will pose a significant financial burden on him, as it will on plaintiff. But a financial burden is not the same as an inability to pay. After all, the payment of one’s child’s college education has always been regarded as one of those burdens that come along with the privileges and responsibilities of parenting.